Honorable Robert S. Lasnik

1

2

3

4

5

6

7

8

9

10    UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
11                    AT SEATTLE

12

13    OSTERHAUS PHARMACY, INC.,          CASE No. 2:23-cv-01944
CAMMACK'S PHARMACIES, INC. DBA
14    JIM'S PHARMACY AND HOME HEALTH,    **MOTION TO COMPEL INDIVIDUAL**
HARBOR DRUG CO., INC., VALU DRUGS  **ARBITRATION**
15    INC., and MEDFORD PHARMACY GROUP
LLC DBA WEST MAIN PHARMACY, on      **NOTE ON MOTION CALENDAR:**
16    behalf of themselves and all others similarly  **JUNE 30, 2025**
situated,
17
Plaintiffs,
18
v.
19
UNITEDHEALTH GROUP
20    INCORPORATED; OPTUM, INC.;
OPTUMRX, INC.; OPTUMRX HOLDINGS,
21    LLC,

22                    Defendants.

23

24

25

26

27

28

**TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................... 1

II. BACKGROUND .................................................................................................... 2

    A.    Plaintiffs' Lawsuit ...................................................................................... 2

    B.    The Parties and Their Contracts ................................................................ 4

    C.    Provider Agreements ................................................................................. 4

    D.    OptumRx's Provider Manual .................................................................... 6

III. LEGAL STANDARD ........................................................................................... 8

IV. ARGUMENT ........................................................................................................ 9

    A.    The Parties Have Valid, Enforceable Arbitration Agreements ................. 9

    B.    The Parties' Disputes Fall Squarely Within the Arbitration Agreements ................. 11

        1.    Plaintiffs' unconscionability complaints are for the arbitrator to decide. ....... 12

        2.    Plaintiffs' unconscionability arguments fail on the merits. ........................... 14

V. CONCLUSION ..................................................................................................... 22

# TABLE OF AUTHORITIES

## Cases

*AAMH Pharmaceutical Inc. v. OptumRx*,
  2019 WL 13152208 (Cal. Super. Ct. Apr. 22, 2019) ..................................................17

*Allbaugh v. Perma-Bound*,
  2009 WL 10676437 (W.D. Wash. Aug. 14, 2009) ....................................................21

*Bogicevic v. Seabourn Cruise Line Ltd.*,
  580 F. Supp. 3d 970 (W.D. Wash. 2022) ....................................................................2

*Briggs v. Service Corp Int'l*,
  2023 WL 2075958 (W.D. Wash. Feb. 17, 2023) .........................................................2

*Burton's Pharmacy, Inc. v. CVS Caremark Corp.*,
  2015 WL 5430354 (M.D.N.C. Sept. 15, 2015) .........................................................15

*Butler v. ATS Inc.*,
  2021 WL 1382378 (D. Minn. Apr. 13, 2021) .......................................................16, 21

*Caremark, LLC v. Chickasaw Nation*,
  43 F.4th 1021 (9th Cir. 2022).......................................................................9, 10, 13

*Caremark, LLC v. Choctaw Nation*,
  104 F.4th 81 (9th Cir. 2024)...............................................................................9, 10

*Caremark LLC v. Choctaw Nation*,
  2022 WL 768098 (D. Ariz. Mar. 14, 2022) ..............................................................20

*Carlson v. BMW Fin. Servs. NA, LLC*,
  --- F. Supp. 3d ----, 2025 WL 80245 (D. Minn. Jan. 13, 2025) ................14, 15, 16, 17

*Chavez v. Bank of America*,
  2011 WL 4712204 (N.D. Cal. Oct. 7, 2011) .............................................................18

*Chickasaw Nation v. Caremark*,
  2022 WL 4624694 (E.D. Okla. Sept. 30, 2022) .........................................................17

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
  207 F.3d 1126 (9th Cir. 2000)...................................................................................8

*Comer v. Micor, Inc.*,
  436 F.3d 1098 (9th Cir. 2006)............................................................................9, 10

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985) ...................................................................................................8

*DiGiacomo v. Ex'pression Ctr. for New Media, Inc.*,
  2008 WL 4239830 (N.D. Cal. Sept. 15, 2008) ..........................................................19

*Erwin v. Cotter Health Ctrs.*,
  161 Wash. 2d 676 (2007) ........................................................................................14

*ev3 Inc. v. Collins*,
  2009 WL 2432348 (Minn. Ct. App. Aug. 11, 2009)...................................................................11

*Fallo v. High-Tech Inst.*,
  559 F.3d 874 (8th Cir. 2009)...................................................................................................13

*Glacier Park Iron Ore Props., LLC v. U.S. Steel Corp.*,
  961 N.W.2d 766 (Minn. 2021)................................................................................................13

*Gooden v. Village Green Mgmt. Co.*,
  2002 WL 31557689 (D. Minn. Nov. 15, 2002) ......................................................................21

*Green Tree Fin. Corp. Ala. v. Randolph*,
  531 U.S. 79 (2000).....................................................................................................................9

*Guaschino v. Hyundai Motor Am.*,
  2023 WL 8126846 (C.D. Cal. Sept. 27, 2023)........................................................................10

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  586 U.S. 63 (2019)...............................................................................................................13, 14

*Mabe v. OptumRx*,
  2024 WL 3498353 (M.D. Pa. July 22, 2024)..........................................1, 4, 5, 6, 9, 10, 14, 16, 19

*Martinez-Gonzalez v. Elkhorn Packing Co., LLC*,
  635 F. Supp. 3d 883 (N.D. Cal. 2022) ....................................................................................11

*MHA v. Unitedhealth Grp.*,
  2017 WL 1095036 (D.N.J. Mar. 23, 2017)..............................................................................17

*Mulcahy v. Farmers Ins. Co. of Wash.*,
  152 Wash. 2d 92 (2004) ..........................................................................................................14

*NCMIC Ins. Co. v. Allied Profs. Ins. Co.*,
  694 F. Supp. 3d 1164 (D. Minn. 2023) ...................................................................................11

*OptumRx v. Atlantis Pharmacy*,
  2023 WL 5277214 (Fla. Cir. Ct. Aug. 8, 2023) ...................................................................1, 17

*OptumRx v. South Miami Pharmacy*,
  2023 WL 3790628 (Fla. Cir. Ct. June 1, 2023) ....................................................................1, 17

*OptumRx v. VistaCare Pharmacy*,
  2023 WL 1766097 (Fla. Cir. Ct. Feb. 2, 2023).......................................................................17

*OptumRx, Inc. v. Marinette-Menominee Prescription Ctr., Ltd.*,
  2023 WL 4485615 (Wis. Cir. Ct. June 30, 2023) ...................................................................16

*Oracle America, Inc. v. Myriad Group A.G.*,
  724 F.3d 1069 (9th Cir. 2013).................................................................................................13

*Osterhaus Pharmacy Inc. v. CVS Health Corp.*,
  2024 WL 4785818 (D. Ariz. Nov. 14, 2024)......................................................................17, 18

*Osterhaus Pharmacy Inc. v. CVS Health Corp.*,
2025 WL 472731 (D. Ariz. Feb. 12, 2025)................................................................2, 18, 19, 21

*Paduano v. Express Scripts, Inc.*,
55 F. Supp. 3d 400 (E.D.N.Y. 2014) ..........................................................................17

*Patrick v. Running Warehouse, LLC*,
93 F.4th 468 (9th Cir. 2024)......................................................................................20

*In re Petters Co., Inc.*,
480 B.R. 346 (Bankr. D. Minn. 2012) .......................................................................11

*Pokorny v. Quixtar, Inc.*,
601 F.3d 987 (9th Cir. 2010)......................................................................................14

*Rent-A-Ctr., W. v. Jackson*,
561 U.S. 63 (2010) .....................................................................................................13

*Saeedy v. Microsoft Corp.*,
--- F. Supp. 3d ----, 2024 WL 4945106 (W.D. Wash. Nov. 21, 2024) .....................14

*Seizer v. Sessions*,
132 Wash. 2d 642 (1997) ...........................................................................................14

*Shanghai Com. Bank Ltd. v. Kung Da Chang*,
189 Wash. 2d 474 (2017) ...........................................................................................15

*Siebert v. Amateur Athletic Union of U.S., Inc.*,
422 F. Supp. 2d 1033 (D. Minn. 2006) .............................................................9, 16, 18

*Smith v. Spizzirri*,
601 U.S. 472 (2024) ...................................................................................................22

*Stofleth v. Morgan Stanley Smith Barney, LLC*,
2021 WL 3630510 (W.D. Wash. Aug. 17, 2021) ......................................................13

*Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
559 U.S. 662 (2010) .....................................................................................................8

*Tompkins v. 23andMe, Inc.*,
840 F.3d 1016 (9th Cir. 2016)..............................................................................20, 21

*Tompkins v. 23andMe, Inc.*,
2014 WL 2903752 (N.D. Cal. June 25, 2014) ...........................................................18

*In re Van Dusen*,
654 F.3d 838 (9th Cir. 2011)......................................................................................13

*Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*,
489 U.S. 468 (1989) .....................................................................................................8

*In re Wholesale Grocery Prods. Antitrust Litig.*,
707 F.3d 917 (8th Cir. 2013)......................................................................................11

*Yufan Zhang v. UnitedHealth Grp.*,
  367 F. Supp. 3d 910 (D. Minn. 2019) ..................................................................14, 20

**Statutes**

9 U.S.C. § 2 ..........................................................................................................................8

9 U.S.C. § 3 ................................................................................................................2, 8, 22

9 U.S.C. § 4 ..........................................................................................................................8

**Rules**

Fed. R. Civ. P. 12(b)(3) .......................................................................................................2

**Other Authorities**

AAA Commercial Arbitration Rules, *available at*
  https://adr.org/sites/default/files/Commercial%20Rules.pdf ....................................13, 18

AAA Commercial Fees Schedules, *available at*
  https://www.adr.org/sites/default/files/Commercial_Arbitration_Fee_Schedule_1.p
  df .............................................................................................................................18

OptumRx, *About us*, http://www.optum.com/about-us (last visited Apr. 21, 2025)...........................15

*The Role of Pharmacy Services Administrative Organizations for Independent Retail
  and Small Chain Pharmacies, Avalere Health* (Sept. 30, 2021),
  https://documents.ncsl.org/wwwncsl/Foundation/sponsor-
  views/The_Role_of_PSAOs_Independent_Pharmacies.pdf..........................................5

# I. INTRODUCTION

This case should not proceed in this Court because the parties have individual arbitration agreements covering all the disputes at issue.

As Plaintiffs acknowledge in their Complaint, throughout the period relevant to this lawsuit, they had contracts with Defendant OptumRx.  The contracts governed how Plaintiffs (which are substantial pharmacy businesses) would be reimbursed for prescription drugs dispensed to members of health plans with pharmacy benefits administered by OptumRx (a pharmacy benefit manager, or "PBM").  Plaintiffs' lawsuit challenges a particular aspect of compensation under their contracts, which they refer to as a "DIR fee."  ECF 54, First Amended Complaint ("FAC") ¶¶ 106–16.

The same contracts governing the disputed "DIR fee" also require individual arbitration of "any and all" disputes between the parties, and are explicit that class actions are not permitted—a prohibition Plaintiffs have ignored.  Plaintiffs cannot pick and choose which contract provisions are binding and which are not.  Plaintiffs accepted significant compensation for years from OptumRx under their contracts—more than $30 million in the period relevant to this case—and now rely on the contracts' terms to seek additional reimbursements in this lawsuit.  Plaintiffs allege that it would be "unconscionable" to require arbitration, but there is nothing unconscionable about holding Plaintiffs to the benefit of their explicit bargain.  This is particularly true here, given that Plaintiffs are substantial businesses and sophisticated litigants—having already filed class actions against several other PBMs, asserting similar challenges.  Moreover, the contract requires the *arbitrator* (and not the court) to resolve any disputes regarding unconscionability, so this Court should not even reach Plaintiffs' unconscionability arguments in ruling on this motion.

Numerous courts have compelled arbitration based on the same or nearly identical arbitration agreements.  *See, e.g.*, *Mabe v. OptumRx*, 2024 WL 3498353, at *17 (M.D. Pa. July 22, 2024); *OptumRx v. Atlantis Pharmacy*, 2023 WL 5277214, at *5 (Fla. Cir. Ct. Aug. 8, 2023), *aff'd*, No. 4D2023-2163 (Fla. Dist. Ct. App. June 20, 2024); *OptumRx v. South Miami Pharmacy*, 2023 WL 3790628, at *1 (Fla. Cir. Ct. June 1, 2023), *aff'd*, 2024 WL 3350959, at *1 (Fla. Dist. Ct. App. July 10, 2024).

1    Accordingly, Plaintiffs should be compelled to individual arbitration, and this case should be

2    stayed pending these individual arbitrations, pursuant to the Federal Arbitration Act (9 U.S.C. § 3)

3    ("FAA") and Rule 12(b)(3).[1]

## II. BACKGROUND

4

### A.    Plaintiffs' Lawsuit

5

6    This lawsuit is one of three putative class actions filed by the same plaintiffs, represented by

7    the same attorneys, in this district.

8    More than a year ago, Osterhaus Pharmacy Inc. ("Osterhaus"), an Iowa-based pharmacy, sued

9    another PBM (CVS Caremark) based on nearly identical theories to those presented here, also

10   challenging the calculation of DIR fees.  *See Osterhaus Pharmacy Inc. v. CVS Health Corp.*, No. 2:23-

11   cv-01500-RSM (W.D. Wash. Sept. 26, 2023), ECF 1.  Another Plaintiff here, Cammack's Pharmacies,

12   Inc. d/b/a Jim's Pharmacy and Home Health ("Jim's Pharmacy"), was later added as a plaintiff.  No.

13   2:24-cv-01539-JJT (D. Ariz. Aug. 1, 2024), ECF 65.  This Court transferred the CVS case *sua sponte*

14   to the District of Arizona because the claims and parties had no connection to Washington, and the

15   Arizona district court ultimately compelled arbitration based on an arbitration agreement contained in

16   the PBM's Provider Manual.  *See Osterhaus Pharmacy Inc. v. CVS Health Corp.*, 2025 WL 472731

17   (D. Ariz. Feb. 12, 2025), *appeal filed*, No. 25-1467 (9th Cir.).

18   Osterhaus filed this lawsuit a few months later, on December 18, 2023.  ECF 1.  After filing

19   this lawsuit, OptumRx raised its arbitration agreement with Osterhaus and the parties explored whether

20   they could reach agreement on a process to resolve their dispute.  ECF 38.  The parties could not.  To

21   avoid transfer, Osterhaus then filed an amended complaint, adding several Plaintiffs that allege contacts

22   with this district.  FAC ¶¶ 5–9.  The four new plaintiffs are Jim's Pharmacy, Harbor Drug Co., Inc.

23   ("Harbor Drug"), Valu Drugs Inc. ("Valu Drugs"), and Medford Pharmacy Group LLC d/b/a West

24   Main Pharmacy ("West Main Pharmacy").  Three of the new plaintiffs (Jim's Pharmacy, Harbor Drug,

25   and Valu Drugs) operate in Washington, while the fourth, West Main Pharmacy, "is a limited liability

26

27   [1] *See Briggs v. Service Corp Int'l*, 2023 WL 2075958, at *3 (W.D. Wash. Feb. 17, 2023) (considering
     a motion to compel arbitration brought under 12(b)(3) for improper venue); *Bogicevic v. Seabourn
28   Cruise Line Ltd.*, 580 F. Supp. 3d 970 (W.D. Wash. 2022) (same).

company organized under the laws of Washington," but with its "principal place of business" in Oregon. *Id.* ¶ 9. As another difference, Osterhaus (previously the sole Plaintiff) alleges that it sold its business to another pharmacy owner in January 2022, *id.* ¶¶ 5, 20, and records reflect that it closed in May 2022, Declaration of Erin Frank ("Frank Decl."), ¶ 32, while all of the new Plaintiffs are still in operation.

Four of the Plaintiffs in this case—Osterhaus, Jim's Pharmacy, Harbor Drug, and Valu Drugs— filed yet a third case in this district against another PBM (Express Scripts) a few months after this one. *See Osterhaus Pharmacy Inc. v. Express Scripts Inc.*, No. 2:24-cv-00039-RAJ (W.D. Wash. Jan. 9, 2024), ECF 1. In that case, Express Scripts did not move to compel arbitration because it appears that that the contracts at issue did not include an arbitration agreement. *See, e.g.*, *id.* ECF 78-3 at 4 (contract example).

In this case, Plaintiffs challenge OptumRx's calculation of certain fees Plaintiffs refer to as "DIR fees," which are controlled by the parties' Pharmacy Network Agreements ("Provider Agreements"). The same contracts require individual arbitration of all disputes. Even though Plaintiffs agreed to arbitrate all disputes and expressly gave up the right to pursue class remedies, they now purport to bring this case on behalf of a putative class of thousands of pharmacies: "[a]ll pharmacy servic[e] providers in the United States that are not members of the same corporate family as a Big Three PBM and that have paid DIR fees directly to OptumRx from September 26, 2019 until the time of trial." FAC ¶ 117.[2] The putative class therefore includes various pharmacies with different Provider Agreements and fee schedules, through different contracting organizations, as well as many pharmacies that have direct agreements with OptumRx. The vast majority of the thousands of pharmacies in the putative class are subject to arbitration agreements through their own Provider Agreements and through OptumRx's Provider Manual, which requires arbitration in Minnesota. Frank Decl. Ex. C (current

---

[2] Although the FAC's class definition specifies a class period starting on September 26, 2019, the FAC elsewhere refers to December 18, 2019, *see* FAC ¶ 10, which is four years before the date the lawsuit was filed. The date of September 26, 2019 in the class definition appears to be a typographical error retained from Osterhaus's similar suit against CVS, which was filed on September 26, 2023.

GIBSON, DUNN & CRUTCHER LLP
1700 M STREET, N.W.
WASHINGTON, DC 20036

Provider Manual), p. 127.  Plaintiffs also named OptumRx's corporate parents (also based in Minnesota) as defendants in this lawsuit.  *See* FAC ¶ 11; *see also* Frank Decl. ¶ 4.

## B.    The Parties and Their Contracts

Plaintiffs are all "independent" pharmacies, meaning that they are not part of large chains, such as CVS or Walgreens.  However, each Plaintiff enlisted a contracting agent (also called a pharmacy services administrative organization, or "PSAO") to negotiate and enter into a Provider Agreement on their behalf, along with all of the other PSAO pharmacy members.  Frank Decl. ¶¶ 6, 20–54; *see also Mabe*, 2024 WL 3498353, at *10, *13 (describing this contracting process).  There are different PSAOs and their services to pharmacies vary.  But, generally speaking, PSAOs allow independent pharmacies to band together and exert significant bargaining leverage in contracting with PBMs like OptumRx.  Frank Decl. ¶¶ 6, 20–24.  The PSAOs also help their member pharmacies with group purchasing of pharmaceuticals, payor/PBM credentialing and contracting, central payment services, and clinical performance tools.  *Id.* ¶ 6.

Plaintiffs' contracts with OptumRx involved two main documents: (1) the Provider Agreement, often negotiated and executed by a PSAO, through which Plaintiffs (and other PSAO members) joined OptumRx's pharmacy network, and (2) OptumRx's Pharmacy Provider Manual, which was incorporated into the Provider Agreement, publicly available on OptumRx's website, and contained various terms applicable to pharmacies in OptumRx's network.

## C.    Provider Agreements

As detailed in the accompanying declaration, each Plaintiff pharmacy joined a PSAO, and each PSAO, in turn, entered into a Provider Agreement with OptumRx on behalf of its members (including Plaintiffs).  Frank Decl. ¶¶ 27–54.[3]  The PSAOs at issue in this case are AlignRx, RxSelect, Pharmacy

---

[3] Plaintiffs' memberships in their respective PSAOs are established by a third-party website, referred to as NCPDP, through which pharmacies report their PSAO affiliations.  Frank Decl. ¶ 25.  Plaintiffs also have written participation agreements with their PSAOs, though OptumRx is not a party to those agreements, which are generally kept confidential.  *Id.* ¶ 9; *see also Mabe*, 2024 WL 3498353, *10.  In the event that Plaintiffs dispute any of the issues discussed in this motion, Defendants respectfully request leave to conduct limited discovery into any disputed issues relevant to this motion, such as a potential subpoena to the relevant PSAOs.

First, and LeaderNet, which each serve thousands of pharmacies.  *Id.*[4]  Each of the Provider Agreements applicable to Plaintiffs expressly states that it is binding on all of the PSAO's members.  *See, e.g.*, *id.* Ex. E (redacted Pharmacy First Provider Agreement), p. 1 ("Company [the PSAO] has the authority to enter into this Agreement as the agent for and on behalf of Pharmacy [the PSAO member pharmacies including Osterhaus].");  *see also id.* Ex. G, p. 1; *id.* Ex. H, p. 1; *id.* Ex. I, p. 1 (other redacted applicable Provider Agreements, all containing identical language).  Through these agreements, pharmacies (like Plaintiffs) "are bound by their PSAOs' [Pharmacy] Agreements, including agreements to arbitrate."  *Mabe*, 2024 WL 3498353, at *10; *see also id.* at *13 ("because the PSAOs acted as their agents in contracting with OptumRx, Plaintiffs are . . . bound by the [Pharmacy] Agreements.").

The Provider Agreements include various compensation terms that apply to Plaintiffs, such as prescription reimbursement rates and the "DIR fees" that are a central focus of Plaintiffs' claims.  *See, e.g.*, FAC ¶¶ 52–116 (allegations about DIR fees); Frank Decl. ¶¶ 31, 36, 40, 43, 46, 50, 54 (describing how the Provider Agreements incorporate amendments addressing how Contingent Performance Fees (which Plaintiffs refer to as DIR fees) will be calculated for the PSAO's members).

The relevant Provider Agreements also require arbitration of any and all disputes, using materially identical language.  Frank Decl. Ex. E, pp. 18–19 §§ 10.1–10.13; *id.* Ex. G, pp. 18–20 §§ 10.1–10.13; *id.* Ex. H, pp. 18–20 §§ 10.1–10.13; *id.* Ex. I, pp. 18–19 §§ 10.1–10.13.  Specifically, the Provider Agreements require arbitration—in lieu of court litigation—of any "Dispute" between the parties, § 10.3, which is broadly defined as "any and all issues and/or disputes between [the parties] . . . including, but not limited to all questions of arbitrability, the existence, validity, scope, interpretation, or termination of the Agreement or any term thereof prior to the inception of any litigation or arbitration," § 10.1.  Arbitration must occur using the American Arbitration Association's ("AAA") Commercial Rules, and the FAA applies.  §§ 10.3, 10.11.  Arbitration must be "on an

---

[4] *See The Role of Pharmacy Services Administrative Organizations for Independent Retail and Small Chain Pharmacies, Avalere Health* (Sept. 30, 2021) at 5, https://documents.ncsl.org/wwwncsl/Foundation/sponsor-views/The_Role_of_PSAOs_Independent_Pharmacies.pdf (listing PSAO membership).

individual basis," and no class action or consolidated arbitration is permitted.  § 10.9.  Finally, the arbitration agreements contain a severability clause, such that if any part of the agreement "is deemed to be unlawful, invalid, or unenforceable, such unlawfulness, invalidity, or unenforceability shall not serve to invalidate any other part" of the agreement.  § 10.12.[5]

In addition to the provisions discussed above, the Provider Agreements also incorporate by reference and require compliance with OptumRx's Provider Manual—the other contract document discussed below.  *See, e.g.*, Frank Decl. Ex. E, pp. 4, 10 §§ 1.32, 3.15 (incorporating Provider Manual into the Provider Agreement and stating that it will be binding on member pharmacies); *id.* Ex. G, pp. 4, 10 §§ 1.32, 3.15; *id.* Ex. H, pp. 4, 10–11 §§ 1.31, 3.15; *id.* Ex. I, pp. 4, 11 §§ 1.31, 3.15.

### D.    OptumRx's Provider Manual

The other relevant contract document is OptumRx's Provider Manual.  As discussed above, the Provider Manual is incorporated by reference into, and made contractually binding by, the Provider Agreements entered into by PSAOs.  The Provider Manual itself also makes clear that it is binding on all network pharmacies, like Plaintiffs.  *See* Frank Decl. Ex. C (current Provider Manual), p. 3 ("As a Network Pharmacy Provider . . . you [Plaintiffs] are responsible for monitoring and complying with all changes to the PM [Provider Manual].  Failure to adhere to any of the provisions and terms of the [Network] Agreement, which includes this PM . . . will be viewed as a breach of the [Network] Agreement."); *id.* Ex. A (2022 Provider Manual), p. 3 (same).  *See also Mabe*, 2024 WL 3498353, at *7–8 ("The Provider Manual is undisputably a binding contract" intended to "govern[] the relationship between [in network pharmacies] and OptumRx.").  The Provider Manual contains various terms and procedures governing the parties' relationship, including claim submission procedures, terms related to drug pricing, claim dispute processes, and audit procedures.  Frank Decl. ¶ 13.

The Provider Manual is made available to all pharmacies (and the general public) on OptumRx's website.  It is regularly updated, and updates to the Provider Manual become effective thirty days after being posted, and are accepted by pharmacies by submitting claims to OptumRx after

---

[5] The applicable Provider Agreements state that arbitration will be conducted in Los Angeles County or Orange County, California, § 10.4, but for nearly all Plaintiffs this has been superseded by a provision of the Provider Manual directing arbitration to take place in Hennepin County, Minnesota.

the effective date. *Id.* Ex. C, p. 3. OptumRx also notifies PSAOs and participating independent pharmacies of updates to the Provider Manual directly via fax, and OptumRx's records reflect that Plaintiffs received multiple notices of updated Provider Manuals, including notices specifically referencing the dispute resolution provision. *Id.* ¶¶ 18–19.

Like the Provider Agreement, the Provider Manual expressly requires arbitration of "any and all issues, disputes, and/or controversies between the parties," including "all disputes relating in any way to . . . the Pharmacy Provider's status in the [OptumRx] network." *Id.* Ex. C, p. 126; *see also id.* Ex. A, p. 133 (similar language). Arbitration extends to "any and all questions regarding arbitrability or the formation, scope, validity, and/or interpretation of the parties' agreement to arbitrate." *Id.* Ex. C, p. 127; *see also id.* Ex. A, p. 133 (similar language). "[T]he parties acknowledge that neither will have the right to litigate a Dispute in court, and that neither will have a right to a trial by a judge or jury, and the right to discovery is limited. **The parties each waive all such rights by agreeing that all disputes must be resolved exclusively in arbitration.**" *Id.* Ex. C, p. 128 (emphasis in original); *see also id.* Ex. A, p. 135 (identical language).

The Provider Manual incorporates a fair arbitration process. Arbitration must occur using the AAA Commercial Rules, and the FAA applies. *Id.* Ex. C, pp. 127, 128–29; *id.* Ex. A, pp. 133, 135. Arbitration must be "resolved exclusively on an individual basis" and not in a class action, consolidated, or representative proceeding, and the parties agree that "**each waives the right to participate in a class proceeding**." *Id.* Ex. C, p. 128 (emphasis in original); *see also id.* Ex. A, p. 135 (identical language). Each party is responsible for its own fees, and there are no escrow or fee-shifting provisions. *Id.* Ex. C, p. 128; *id.* Ex. A, p. 134. Finally, the arbitration agreements in the Provider Manual also contain a severability clause. *Id.* Ex. C, p. 128; *see also id.* Ex. A, p. 135 (similar language). Although there have been some changes to the Provider Manual's arbitration provision over time,[6] the Provider Manual consistently has required arbitration of all disputes—including disputes about arbitrability—throughout the period relevant to this case.

---

[6] For example, in July 2022, the Provider Manual was changed to state that arbitration will occur in Hennepin County, Minnesota, Frank Decl. Ex. C (current Provider Manual), p. 127, whereas previously

*(Cont'd on next page)*

*   *   *

Through their contracts with OptumRx, Plaintiffs gained access to beneficiaries' prescription benefits administered by OptumRx—and reaped substantial financial benefits (more than $30 million in the time period relevant to this case) from participation in OptumRx's network. *See* Declaration of Heather Bates ("Bates Decl."), ¶ 8; *id.* Ex. B (calculating reimbursements by OptumRx to Plaintiffs, based on OptumRx's claim data). The tens of millions that Plaintiffs received from OptumRx reflect just a fraction of their overall revenues, because they contracted with other PBMs as well, such as Caremark and Express Scripts—as demonstrated by Osterhaus's parallel lawsuits against these other PBMs. Plaintiffs therefore are substantial businesses, with the resources and means to arbitrate their claims—as they expressly agreed to do in their contracts with OptumRx.

### III. LEGAL STANDARD

Under the Federal Arbitration Act, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Courts therefore "*shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4) (emphasis in original). "[T]he central or 'primary' purpose of the FAA is to ensure that 'private agreements to arbitrate are enforced according to their terms.'" *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) (citing *Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)). "The court's role under the Act is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). If the answer to both of these inquiries is yes—as they are here—the FAA "requires the court to enforce the arbitration agreement in accordance with its terms." *Id.* Additionally, when the parties have an agreement to arbitrate, "the party resisting arbitration bears the burden of

---

it stated that arbitration should occur in Los Angeles or Orange County, California, *id.* Ex. A (January 2022 Provider Manual, predating change), p. 133. Most Plaintiffs remain in OptumRx's network today, so are subject to the current version of the Provider Manual requiring arbitration in Minnesota, though because Osterhaus alleges that it was sold in January 2022, it arguably is subject to the January 2022 Provider Manual requiring arbitration in California.

proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp. Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

## IV. ARGUMENT

Plaintiffs are required to arbitrate their claims because the parties have valid, binding arbitration agreements. Plaintiffs' agreements—in both the Provider Agreements and Provider Manuals—require individual arbitration of any and all disputes. Likewise, because the agreements contain valid delegation clauses, any disputes about arbitrability, such as Plaintiffs' argument that requiring arbitration would be "unconscionable," FAC ¶ 116, are for the arbitrator to decide. OptumRx's motion to compel arbitration should be granted under the FAA and controlling law.

### A.    The Parties Have Valid, Enforceable Arbitration Agreements

Plaintiffs are bound by arbitration agreements under black-letter principles of agency, estoppel, and ratification. As described above, Plaintiffs' PSAOs acted as Plaintiffs' contracting agents and entered into Provider Agreements on behalf of their member pharmacies, including Plaintiffs, so Plaintiffs are bound based on principles of agency. *E.g.*, Frank Decl. ¶¶ 6, 21; *id.* Ex. E (Pharmacy First Provider Agreement); *see also Mabe*, 2024 WL 3498353, at *1, *9–11. Plaintiffs are also bound by the Provider Manual under the same principles of agency, because the manual is expressly incorporated into the Provider Agreement. Frank Decl. Ex. E, pp. 4, 10 §§ 1.32, 3.15; *id.* Ex. C (current Provider Manual), p. 3; *id.* Ex. A (2022 Provider Manual), p. 3.

The Ninth Circuit has held that pharmacies are bound to Provider Manual arbitration agreements in similar circumstances. *See Caremark, LLC v. Choctaw Nation*, 104 F.4th 81, 89 (9th Cir. 2024) (holding that pharmacies were bound by Provider Manuals incorporated by reference into Provider Agreements); *Caremark, LLC v. Chickasaw Nation,* 43 F.4th 1021, 1030–31 (9th Cir. 2022) (same). The terms of these agreements—and Plaintiffs' agreement to be bound by them—establish a valid, binding contract. *See Siebert v. Amateur Athletic Union of U.S., Inc.*, 422 F. Supp. 2d 1033, 1039 (D. Minn. 2006) ("Although arbitration is contractual in nature, a person who did not physically sign an agreement may be bound by it on the ordinary principles of contract and agency." (cleaned up)); *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) ("[N]onsignatories of arbitration

agreements may be bound by the agreement under ordinary contract and agency principles." (citation omitted)).  And in *Mabe v. OptumRx*, the district court compelled more than 400 pharmacies that sued OptumRx in court to arbitrate under both the Provider Manuals and Provider Agreements, finding that the pharmacies were bound under principles of agency, estoppel, and ratification.  2024 WL 3498353, at *7–11, *16–17.  The reasoning in *Mabe* is directly applicable here.

In addition to principles of agency, Plaintiffs are bound by principles of estoppel and ratification.  Here, Plaintiffs are challenging their DIR compensation *under the Provider Agreements*. FAC ¶ 124 (allegations challenging DIR compensation and alleged breach of contract); Frank Decl. ¶¶ 31, 36, 40, 43, 46, 50, 54 (describing how Provider Agreements incorporate amendments setting out DIR compensation terms).  It is well-established that Plaintiffs cannot simultaneously dispute the validity of the Provider Agreement as a binding contract and avoid an arbitration provision in the same contract.  *See, e.g.*, *Comer,* 436 F.3d at 1101 (holding that "[e]quitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes" (cleaned up)); *Guaschino v. Hyundai Motor Am.,* 2023 WL 8126846, at *3 (C.D. Cal. Sept. 27, 2023) (A party cannot "assert[] claims based on the [agreement] while contesting an arbitration clause in that same agreement.").

Additionally, independent of any claims and allegations by Plaintiffs in this case, Plaintiffs' acceptance of substantial, direct benefits under the parties' agreements, *see* supra at 8, shows that they are bound by their contracts.  *See* Bates Decl. Ex. B; *Mabe*, 2024 WL 3498353, at *16–17 (pharmacies that "have submitted thousands of claims and accepted millions of dollars in reimbursements from OptumRx under the very same [Pharmacy] Agreements and Provider Manuals . . . cannot both benefit from and seek to enforce either the Provider Manual or [Pharmacy] Agreements and then repudiate these same agreements to avoid arbitration."); *Chickasaw Nation*, 43 F.4th at 1031 ("considering the hundreds of thousands of claims the Nation has submitted to Caremark over the last several years . . . the Nation [could not] plausibly deny that it formed contracts with Caremark."); *Choctaw Nation*, 104 F.4th at 89 (finding Provider Manuals "validly formed" where "the Nation received $90,500,000 in reimbursements for pharmacy claims from 2014 to 2021"); *see also NCMIC Ins. Co. v. Allied Profs.*

*Ins. Co.*, 694 F. Supp. 3d 1164, 1169 (D. Minn. 2023) (estoppel can be invoked when a "non-signatory exploits or embraces a contract containing an arbitration clause" by "knowingly seeking and obtaining direct benefits from that contract" (cleaned up)), *aff'd*, 110 F.4th 1072 (8th Cir. 2024).

Finally, even though the signatory to the Provider Agreement was OptumRx, Plaintiffs are also required to arbitrate claims against OptumRx's corporate parents. A non-signatory corporate parent or affiliate may enforce an arbitration provision when the plaintiff "alleges . . . 'substantially interdependent and concerted misconduct'" by the non-signatory and a signatory affiliate. *In re Petters Co., Inc.*, 480 B.R. 346, 361–62 (Bankr. D. Minn. 2012) (quoting *ev3 Inc. v. Collins*, 2009 WL 2432348, at *3 (Minn. Ct. App. Aug. 11, 2009)); *see also, e.g.*, *In re Wholesale Grocery Prods. Antitrust Litig.*, 707 F.3d 917, 922–23 (8th Cir. 2013); *Martinez-Gonzalez v. Elkhorn Packing Co., LLC*, 635 F. Supp. 3d 883, 893 (N.D. Cal. 2022). Here, Plaintiffs' allegations against OptumRx and its corporate parents are "substantially interdependent," because Plaintiffs allege in generic fashion that "various legal entities within UnitedHealth Group [OptumRx's indirect corporate parent] perform PBM activities, [which] all do so under the OptumRx name," FAC ¶ 11, and that these other entities supposedly benefit financially from OptumRx's collection of DIR fees, *id.* ¶¶ 51, 99. Plaintiffs are required to arbitrate all of their claims against all Defendants in this case, under their agreements with OptumRx, the FAA, and black-letter contract principles.

**B.    The Parties' Disputes Fall Squarely Within the Arbitration Agreements**

All of the parties' disputes—including any disputes about arbitrability—fall within their arbitration agreements. The Provider Agreements each require arbitration of any "Dispute" between the parties (§ 10.3), which is broadly defined as "any and all issues and/or disputes between [the parties] . . . including, but not limited to all questions of arbitrability, the existence, validity, scope, interpretation, or termination of the Agreement or any term thereof prior to the inception of any litigation or arbitration." *E.g.*, Frank Decl. Ex. E (Pharmacy First Provider Agreement), p. 18 § 10.1. The Provider Manuals similarly require arbitration of any "Dispute," which is defined as "any and all issues, disputes, and/or controversies between the parties, including, but not limited to all disputes relating in any way to the parties' relationship," the Provider Agreement or Provider Manual, and the

"Pharmacy Provider's status in the Administrator's network," as well as "any and all questions regarding arbitrability or the formation, scope, validity, and/or interpretation of the parties' agreement to arbitrate." *Id.* Ex. C (current Provider Manual), pp. 126–27; *see also id.* Ex. A (2022 Provider Manual), p. 133 (similar language).

All of Plaintiffs' claims in the lawsuit involve "issues and/or disputes" with OptumRx—indeed, the claims challenge calculation of fees under ***the same agreement*** that requires arbitration—so they fall squarely within the arbitration provision. *See* FAC ¶¶ 52–116 (various allegations about DIR fees); *see also, e.g.*, Frank Decl. ¶¶ 31, 36, 40, 43, 46, 50, 54 (describing how Provider Agreements incorporate amendments setting out DIR compensation terms).

**1.    Plaintiffs' unconscionability complaints are for the arbitrator to decide.**

Plaintiffs concede the existence of arbitration agreements but nevertheless oppose arbitration because the agreements ostensibly contain "unconscionable terms," all sounding in substantive unconscionability. FAC ¶ 116. Specifically, Plaintiffs complain that (1) the arbitration clause is subject to change at OptumRx's sole discretion; (2) the arbitration clause delegates questions of unconscionability to the arbitrator; (3) the arbitration process is "expensive." *Id.*

None of these complaints provide any basis to avoid Plaintiffs' binding obligations to arbitrate. First, because the parties' agreements include a valid delegation clause, any disputes about arbitrability—including any unconscionability or scope arguments by Plaintiffs—are for the arbitrator to decide. Both the Provider Agreements and the Provider Manuals clearly and expressly delegate all disputes about arbitrability to the arbitrator. *See, e.g.*, Frank Decl. Ex. E (Pharmacy First Provider Agreement), p. 18 § 10.1 (requiring arbitration of any and all disputes, including "all questions of arbitrability"); *see also id.* Ex. C (current Provider Manual), pp. 126–27 (same); *id.* Ex. A (2022 Provider Manual), p. 133 (same). Not only do the agreements delegate questions of arbitrability to the arbitrator, but they also incorporate the AAA's rules, which is independently sufficient to delegate questions of arbitrability to the arbitrator. *See, e.g.*, *id.* Ex. E (Pharmacy First Provider Agreement), p. 18 § 10.3; *id.* Ex. C (current Provider Manual), p. 127; *id.* Ex. A (2022 Provider Manual), p. 133; AAA

Commercial Rules at R-7;[7] *see also Chickasaw Nation*, 43 F.4th at 1031 (arbitration agreements in Caremark provider manuals clearly included delegation clauses by incorporating AAA rules); *Oracle America, Inc. v. Myriad Group A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013) ("Virtually every circuit to have considered the issue has determined that incorporation of the [AAA] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."); *Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009) ("[A]n arbitration provision's incorporation of the AAA Rules . . . is a clear and unmistakable expression of the parties' intent to reserve the question of arbitrability for the arbitrator and not the court.").

Under controlling case law, delegation clauses are enforceable, and therefore courts are required to order a case to arbitration when presented with a valid delegation clause and a dispute about arbitrability—such as Plaintiffs' argument that arbitration would be unconscionable.  *See*, *e.g.*, *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019) ("When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract."); *Glacier Park Iron Ore Props., LLC v. U.S. Steel Corp.*, 961 N.W.2d 766, 769 (Minn. 2021) ("[P]arties to a contract 'may agree to have an arbitrator decide not only the merits of a particular dispute but also gateway questions of arbitrability' . . . . And when parties agree to arbitrate arbitrability, a court may not disregard that agreement." (quoting *Henry Schein*, 586 U.S. at 67–68)); *In re Van Dusen*, 654 F.3d 838, 844 (9th Cir. 2011) (holding that "the law clearly permits parties to delegate 'questions of arbitrability' to an arbitrator."); *Stofleth v. Morgan Stanley Smith Barney, LLC*, 2021 WL 3630510 (W.D. Wash. Aug. 17, 2021) (Lasnik, J.) (enforcing the delegation provision and referring arguments of unconscionability to the arbitrator); *see also Rent-A-Ctr., W. v. Jackson*, 561 U.S. 63, 72 (2010) ("[U]nless [plaintiff] challenged the delegation provision specifically, we must treat it as valid . . . and must enforce it . . . leaving any challenge to the validity of the [arbitration] [a]greement as a whole for the arbitrator.").  When parties "clear[ly] and unmistakabl[y]"

---

[7] AAA Commercial Arbitration Rules, *available at* https://adr.org/sites/default/files/Commercial%20Rules.pdf.

1  agree that an arbitrator should decide arbitrability, the "court may not decide the arbitrability issue."

2  *Henry Schein*, 586 U.S. at 69.

3      **2.    Plaintiffs' unconscionability arguments fail on the merits.**

4      Even if this Court were to consider Plaintiffs' unconscionability arguments, they fail.

5  "Challenges to arbitration clauses on unconscionability grounds are routinely rejected by the courts,"

6  *Yufan Zhang v. UnitedHealth Grp.*, 367 F. Supp. 3d 910, 916 (D. Minn. 2019), and this case is no

7  exception.  In fact, other courts have already rejected unconscionability challenges to OptumRx's

8  arbitration agreements, which are the same or nearly the same as the agreements at issue here.  *See*

9  *Mabe*, 2024 WL 3498353, at *8, *13–16 (rejecting pharmacies' arguments that Optum Rx's arbitration

10  agreements in the Provider Manual and Provider Agreements were unconscionable).

11      **a.    Minnesota law applies.**

12      Although Plaintiffs' arguments should fail under any state's law, Minnesota law applies here.

13  When determining the validity of an arbitration agreement, a federal court must determine which state

14  law applies using the choice of law rules of the forum state (*i.e.*, Washington).  *Pokorny v. Quixtar,*

15  *Inc.*, 601 F.3d 987, 994 (9th Cir. 2010).  Washington choice of law principles first look to whether

16  there is a conflict between Washington law and the law of another state.  *Seizer v. Sessions*, 132 Wash.

17  2d 642, 648 (1997).  Here, there is a conflict between Washington law and Minnesota law: Minnesota

18  requires both substantive *and* procedural unconscionability to render an agreement unconscionable,

19  while Washington law requires only substantive *or* procedural unconscionability.[8]  If there is a conflict,

20  Washington then follows the most significant relationship test set out in the Restatement (Second) of

21  Conflict of Laws, *see Erwin v. Cotter Health Ctrs.*, 161 Wash. 2d 676, 693 (2007), which considers

22  factors like the place of contracting, contract negotiation, and performance; the location and subject

23  matter of the contract; the residence of the parties; the "expectations of the parties," *Mulcahy v.*

24  *Farmers Ins. Co. of Wash.*, 152 Wash. 2d 92, 101 (2004); "certainty, predictability, and uniformity of

25

26

27  [8] *Compare Carlson v. BMW Fin. Servs. NA, LLC*, --- F. Supp. 3d ----, 2025 WL 80245, at *3 (D. Minn. Jan. 13, 2025), *with Saeedy v. Microsoft Corp.*, --- F. Supp. 3d ----, 2024 WL 4945106, at *20 (W.D. Wash. Nov. 21, 2024).

28

result," *Shanghai Com. Bank Ltd. v. Kung Da Chang*, 189 Wash. 2d 474, 485 n.10 (2017); and the "ease in the determination and application of the law to be applied," *id.*

Under this test, Minnesota law applies.  Plaintiffs are scattered across multiple states— Washington, Iowa, and Oregon—and seek to represent a nationwide class of many thousands of pharmacies, challenging OptumRx's nationwide practices.  The common denominator of Plaintiffs' complaint is OptumRx, which is headquartered and maintains its principal place of business in Minnesota.  *See* OptumRx, *About us*, http://www.optum.com/about-us (last visited Apr. 21, 2025). Application of Minnesota law, as opposed to selecting the law of one of Plaintiffs' several home states, would most promote uniformity, certainty, predictability, ease of application, and the parties' expectations.  *See, e.g.*, *Burton's Pharmacy, Inc. v. CVS Caremark Corp.*, 2015 WL 5430354, at *4 (M.D.N.C. Sept. 15, 2015) (concluding that Arizona, "the 'hub' of Caremark's PBM operations," had "a substantial relationship to the parties and the transactions at issue").  Moreover, four of the five named Plaintiffs are subject to the current Provider Manual, which contains a Minnesota forum selection clause.  *See* Frank Decl. Ex. C, p. 127.[9]  Thus, for nearly all Plaintiffs, the place of performance, and the location and subject matter of the arbitration agreements, are in Minnesota.[10]

### b.    The arbitration agreements are not procedurally unconscionable.

Under Minnesota law, "the party asserting unconscionability must show that the contract is *both* procedurally and substantively unconscionable."  *Carlson*, 2025 WL 80245, at *3 (emphasis added). But Plaintiffs cannot mount a procedural attack on the arbitration agreement.  "[P]rocedural

---

[9] Each Plaintiff should be compelled to arbitrate under the most up-to-date version of the Provider Manual through which they submitted claims, because (by the terms of the Provider Manual), each updated version supersedes the previous version of the Provider Manual.  Frank Decl. Ex. C, pp. 3–4. Additionally, the Provider Manual supersedes the Provider Agreement in the case of any conflict.  *Id.* Ex. C, p. 4; *id.* Ex. A, p. 3.  Accordingly, the four Plaintiffs that remain in business today should arbitrate their claims under the current Provider Manual, which requires arbitration in Minnesota.  *Id.* Ex. C, p. 127.  The fifth Plaintiff, Osterhaus, should be compelled to arbitrate under the version of the Provider Manual that was in effect when it alleges it sold its business in January 2022, which required arbitration in California.  *Id.* Ex. A, p. 133.  Alternatively, Plaintiffs should be compelled to arbitrate under their Provider Agreements or previous versions of the Provider Manual—all of which require arbitration of all disputes (including disputes about arbitrability).

[10] To the extent that Plaintiffs argue that another state's law applies, Plaintiffs' unconscionability arguments still fail, and OptumRx reserves the right to further develop its arguments in its reply under any other applicable law.

unconscionability arises if [the signatory] had no meaningful choice but to accept the contract." *Butler v. ATS Inc.*, 2021 WL 1382378, at *19 (D. Minn. Apr. 13, 2021) (cleaned up); *see also Siebert*, 422 F. Supp. 2d at 1040 (unconscionable contract of adhesion requires "great disparity in bargaining power with no opportunity for negotiation"). Here, the Provider Agreements by which Plaintiffs joined the OptumRx network—and which incorporated the Provider Manual—were negotiated not by the individual Plaintiffs but by PSAOs. These PSAOs are sophisticated, experienced actors with substantial negotiating power, leveraging the bargaining power of thousands of pharmacy members. Frank Decl. ¶¶ 6, 21–24. Provider Agreements are negotiated between PSAOs and OptumRx in meaningful, substantial negotiations, including as to the arbitration agreements. *Id.* Pharmacies can choose which (if any) PSAO to join, and different PSAOs offer different programs, terms, and contracts. *See id.* ¶¶ 20, 23; *Mabe*, 2024 WL 3498353, at *13 (enforcing arbitration in suit against OptumRx was not procedurally unconscionable because "Plaintiffs can and do choose whether and when to be part of a PSAO, as well as which PSAO to join").

Minnesota courts have rejected claims of procedural unconscionability with far greater disparities in bargaining power. *See, e.g.*, *Carlson*, 2025 WL 80245, at *4–5 (compelling arbitration under clause in form vehicle lease); *Butler*, 2021 WL 1382378, at *19–20 (compelling arbitration under clause in form truck driver contract). No claim of procedural unconscionability can be sustained here, and that should be the end of the analysis.[11] *See, e.g.*, *Mabe*, 2024 WL 3498353, at *16 (even if the court were to find substantive unconscionability, pharmacies had not established unconscionability "because this court has found there is no procedural unconscionability").

---

[11] In the complaint, Plaintiffs point to an inapposite Wisconsin state court case to support their claims of unconscionability. FAC ¶ 116 (citing *OptumRx, Inc. v. Marinette-Menominee Prescription Ctr., Ltd.*, 2023 WL 4485615, at *1 (Wis. Cir. Ct. June 30, 2023)). The case was decided by a Wisconsin state court applying Wisconsin state law, 2023 WL 4485615, at *3, and it is currently on appeal. *See OptumRx Inc. v. Marinette-Menominee Prescription Center, Ltd.*, Appeal No. 2023AP001475 (Wis. Ct. App. Dec. 15, 2023). Further, the trial court found there was an agency relationship between the PSAO and its pharmacies and that the contract contained an "appropriate" delegation clause, 2023 WL 4485615, at *5, but then inexplicably declined to enforce that clause. The Wisconsin court's opinion should be disregarded.

### c.    The arbitration agreements are not substantively unconscionable.

Even considering Plaintiffs' claims of substantive unconscionability, Plaintiffs cannot satisfy their burden to "show that the contract is . . . substantively unconscionable." *Carlson*, 2025 WL 80245, at *3. First, there is nothing unconscionable about a delegation clause—numerous courts (including this Court) have held they should be enforced, as discussed above. *See supra* at 12–14. Courts have repeatedly found that delegation clauses found in OptumRx agreements are enforceable:

- *OptumRx v. Atlantis Pharmacy*, 2023 WL 5277214, at *5 (Fla. Cir. Ct. Aug. 8, 2023), *aff'd*, No. 4D2023-2163 (Fla. 4th Dist. Ct. App. June 20, 2024) (enforcing 2022 Provider Manual delegation clause).

- *OptumRx v. South Miami Pharmacy*, 2023 WL 3790628, at *5 (Fla. Cir. Ct. June 1, 2023), *aff'd*, 2024 WL 3350959, at *1 (Fla. Dist. Ct. App. July 10, 2024) (same).

- *OptumRx v. VistaCare Pharmacy*, 2023 WL 1766097, at *1 (Fla. Cir. Ct. Feb. 2, 2023), *aff'd*, 2024 WL 1673115, at *1 (Fla. Dist. Ct. App. Apr. 17, 2024) (same).

- *Chickasaw Nation v. Caremark*, 2022 WL 4624694, at *5 (E.D. Okla. Sept. 30, 2022) (enforcing delegation clause in Provider Agreement).

- *AAMH Pharmaceutical Inc. v. OptumRx*, 2019 WL 13152208, at *5 (Cal. Super. Ct. Apr. 22, 2019) (enforcing delegation clause in Provider Manual).

- *MHA v. Unitedhealth Group*, 2017 WL 1095036, at *5 (D.N.J. Mar. 23, 2017) (enforcing identical delegation clause in parent company's Provider Agreement).

- *Paduano v. Express Scripts, Inc.*, 55 F. Supp. 3d 400, 425 (E.D.N.Y. 2014) (enforcing delegation clause in Provider Agreement).

This Court should likewise find that the delegation clause is enforceable and that any challenges to arbitrability are reserved for arbitrators.[12]

---

[12] In the similar case Osterhaus brought against CVS, the District of Arizona declined to enforce a delegation clause after determining that the clause was substantively unconscionable. *Osterhaus Pharmacy Inc. v. CVS Health Corp.*, 2024 WL 4785818 (D. Ariz. Nov. 14, 2024). However, that decision is inapposite for two reasons. First, in *CVS*, the court's decision was primarily based on two provisions that do not appear in the OptumRx agreements, namely escrow and fee shifting provisions. *Id.* at *5–8. *See* Frank Decl. Ex. C, p. 128; *id.* Ex. A, p. 134 (stating each party is responsible for its

*(Cont'd on next page)*

Second, there is no basis for Plaintiffs' assertion that arbitration would be too expensive. "To establish unconscionability, plaintiffs must show arbitration will be cost-prohibitive considering (1) likely arbitrators' fees, and (2) plaintiffs' financial ability to pay them." *Siebert*, 422 F. Supp. 2d at 1041. According to the AAA's fee schedule, which applies to the arbitration agreements, *see* Frank Decl. Ex. C, p. 127; *id.* Ex. A, p. 133, the fee to initiate an arbitration is on a sliding scale depending on the size of the claim, starting at just $925 for claims of $75,000 or less.[13] Moreover, the AAA's Commercial Rules explicitly provide that "[t]he AAA may, in the event of extreme hardship on the part of any party, defer or reduce the administrative fees." AAA Commercial Rules at R-53. Plaintiffs seek substantial damages (as well as trebling and fees/costs), so there is no basis to contend that the AAA's sliding scale is unfair.

Whatever damages Plaintiffs seek here, they have already received significant benefits under their contracts with OptumRx, including millions of dollars in reimbursements, as discussed *supra* at 8. Numerous courts have rejected unconscionability challenges even when presented with much smaller disputes than this case, and when considering the same AAA Commercial Rules. *See, e.g.*, *Siebert*, 422 F. Supp. 2d at 1042 (in case involving AAA Commercial Rules, rejecting cost unconscionability argument on the record presented, and noting the existence of "procedures precisely designed to ensure arbitration does not become cost-prohibitive"); *Tompkins v. 23andMe, Inc.*, 2014 WL 2903752, at *17 (N.D. Cal. June 25, 2014) (holding that a filing fee of $975 under the AAA Commercial Rules to pursue a claim relating to a $95 purchase did not "'shock[ ] the conscience,' particularly relative to litigation expenses"), *aff'd*, 840 F.3d 1016 (9th Cir. 2016); *Chavez v. Bank of America*, 2011 WL 4712204, at *11 (N.D. Cal. Oct. 7, 2011) ($700 AAA filing fee for claim of a

own fees). While the court did also determine that the CVS confidentiality provision was unconscionable, this part of the court's decision primarily relied on Ninth Circuit law, which does not govern whether the arbitration agreements at issue are unconscionable in this case. Second, in addition to relying on Ninth Circuit case law, the court's decision applied Arizona law, which unlike Minnesota law only requires a finding of either substantive or procedural unconscionability. *Osterhaus Pharmacy Inc. v. CVS Health Corp.*, 2024 WL 4785818, at *5. And although the court found the delegation clause unconscionable, the court still subsequently decided to compel arbitration. *See Osterhaus Pharmacy Inc. v. CVS Health Corp.*, 2025 WL 472731.

[13] AAA Commercial Fees Schedules, *available at* https://www.adr.org/sites/default/files/Commercial_Arbitration_Fee_Schedule_1.pdf.

"couple of hundred dollars" did not shock the conscience); *DiGiacomo v. Ex'pression Ctr. for New Media, Inc.*, 2008 WL 4239830, at *6 (N.D. Cal. Sept. 15, 2008) (refusing to find fee structure of AAA commercial arbitration rules substantively unconscionable because the rules provide for the waiver of fees and therefore "do not require plaintiff to bear any type of overly-harsh expense or unconscionable cost that he would not be required to incur in litigation").  The court in *Mabe* likewise rejected the argument by the pharmacies that requiring them to arbitrate their claims against OptumRx would be unconscionable because "the cost of arbitration" would be "prohibitive," noting that the standard to make this showing is "exceedingly high."  2024 WL 3498353, at *13–14.

Third, the modification provisions of the relevant contracts do not render Plaintiffs' arbitration agreements unconscionable.  The current Provider Manual, which supersedes the Provider Agreements, *see* Frank Decl. Ex. C, p. 4; *id.* Ex. A, p. 3, may be "updated periodically"; such updates are effective thirty days after being posted, and are accepted by pharmacies by submitting claims to OptumRx after the effective date.  *Id.* Ex. C, p. 3.[14]

A challenge to a similar provision was rejected by the district court in the companion case by Osterhaus against CVS.  *See Osterhaus Pharmacy Inc. v. CVS Health Corp.*, 2025 WL 472731, at *6–7.  That modification provision, much like this one, provided that amendments would be accepted when a pharmacy submitted claims to the PBM.  *Id.* at *6.  The court explained that such a provision was "not a 'unilateral modification provision' in the true sense of that term."  *Id.*  It could not "operate retroactively"; rather, the PBM was required to give notice of the proposed amendment, which plaintiffs could accept "by submitting claims after the effective date."  *Id.* at *7.  Thus, the provision "differ[ed] markedly from those that have been held to be unconscionable," which generally involved the possibility of *retroactive* modification.  *Id.* at *6.  The modification provision here is similar to the one at issue in the *CVS* case, as Plaintiffs accept amendments to the Provider Manual by submitting

---

[14] Depending on the Provider Agreement at issue, the Provider Agreements may be amended either with thirty days' written notice, Frank Decl. Ex. F (amendment to Provider Agreements), p. 4, or with thirty days' written notice, provided that the PSAO does not object to the amendment in writing, *e.g. id.* Ex. E, p. 20 § 11.2.

1   claims to OptumRx. The same conclusion should follow: there is nothing unconscionable about this

2   provision.

3   Minnesota law is in accord. "[T]here is substantial authority finding that where the contractual

4   authority to amend an arbitration agreement is limited, such as requiring advance notice of such

5   changes or that any changes would only apply to future disputes or claims, the agreement was not

6   illusory." *Yufan Zhang*, 367 F. Supp. 3d at 916 (upholding employment arbitration agreement with

7   unilateral modification provision). That's the case here. Moreover, "under Minnesota law, the

8   covenant of good faith and fair dealing is implied in arbitration agreements." *Id.* at 915. Such an

9   implied covenant constrains a party's ability to unilaterally modify a contract, and likewise defeats an

10  attack based on unconscionability. *See also, e.g.*, *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1033

11  (9th Cir. 2016) ("[T]he implied covenant of good faith and fair dealing prevents a party from exercising

12  its rights under a unilateral modification clause in a way that would make it unconscionable.");

13  *Caremark LLC v. Choctaw Nation*, 2022 WL 768098, at *4 (D. Ariz. Mar. 14, 2022) (finding that

14  pharmacies "manifested assent" to Provider Manual update by submitting claims after receiving notice

15  of update), *aff'd*, 104 F.4th 81.

16  Finally, even if the modification clauses in the Provider Agreements and/or Provider Manual

17  were construed as allowing unilateral modification (which they should not be), these terms would still

18  not make the separate arbitration provision unconscionable. *Patrick v. Running Warehouse, LLC*, 93

19  F.4th 468, 480 (9th Cir. 2024) ("[T]he presence of a unilateral modification provision, without more,

20  does not render a separate arbitration clause at all substantively unconscionable." (citing *Tompkins*,

21  840 F.3d 1016)). In *Patrick*, the plaintiff argued that the arbitration provision was substantively

22  unconscionable because the contract containing the arbitration provision included a unilateral

23  modification provision that allowed the defendant to change the terms of its clickwrap agreement with

24  no notice to its customers. *Id.* at 479. But the Ninth Circuit affirmed that "the mere presence of a

25  unilateral modification clause does not render the arbitration clause, *a separate provision*, substantively

26  unconscionable," because "'a party's challenge to another provision of the contract, or to the contract

27  as a whole, does not prevent a court from enforcing a specific agreement to arbitrate.'" *Id.* (quoting

28

1    *Tompkins*, 840 F.3d at 1032).   The agreement in the instant case is analogous: the modification

2    provisions in the relevant agreements are separate from the arbitration provisions.  *See, e.g.*, Frank

3    Decl. Ex. C, pp. 3, 126–29 (separate modification and arbitration provisions in current Provider

4    Manual); *id.* Ex. E, pp. 18–20 §§ 10, 11.2 (same in Provider Agreement).   Thus, even setting aside that

5    the modification provisions in the arbitration agreements do not permit unilateral modification, these

6    provisions do not render the arbitration agreement unconscionable.

7        In sum, Plaintiffs' arbitration agreements are fair, there is no basis for Plaintiffs'

8    unconscionability arguments, and even if there were any question, that question should be answered

9    by the arbitrator.

10                    **d.        The Court should sever any unconscionable provision.**

11        If the Court were to conclude that any particular provision of the arbitration agreement is

12    unconscionable, severance of that provision from the arbitration agreement is the proper remedy.  This

13    is what the court did in the similar case brought against CVS, though two of the provisions held to be

14    unconscionable are not present here.  *See Osterhaus Pharmacy Inc. v. CVS Health Corp.*, 2025 WL

15    472731, at *12–13 (severing three provisions the court found unconscionable and compelling

16    arbitration); *see also supra* note 12.  Minnesota law likewise authorizes courts to sever unconscionable

17    terms from arbitration agreements.  *Butler*, 2021 WL 1382378, at *22 (severing fee-splitting provisions

18    and enforcing remainder of arbitration clauses); *see also Gooden v. Village Green Mgmt. Co.*, 2002

19    WL 31557689, at *5 (D. Minn. Nov. 15, 2002) ("An unenforceable clause can be stricken from an

20    [arbitration] agreement regardless of the explicit inclusion of a severability clause."); *Allbaugh v.

21    Perma-Bound*, 2009 WL 10676437, at *7 (W.D. Wash. Aug. 14, 2009) ("[C]ourts may sever

22    substantively unconscionable provisions in . . . arbitration agreements and enforce the remainder of the

23    agreement to arbitrate.").   Here, the arbitration agreement explicitly provides that "[i]n the event that

24    any portion" of the agreement "is deemed to be unlawful, invalid or unenforceable, such unlawfulness,

25    invalidity or unenforceability shall not serve to invalidate any other part" of the agreement.  Frank

26    Decl. Ex. C, p. 128; *see also id.* Ex. A, p. 135; *id.* Ex. E, p. 19 § 10.12.  But the Court should never get

27

28

to this point, because all of these arbitrability issues—unconscionability, severability, etc.—are for the arbitrator to decide.

## V. CONCLUSION

Plaintiffs should be held to their agreement to arbitrate this dispute and not proceed in the class context, as outlined in the Provider Agreements and the Provider Manuals. Any disputes about arbitrability, including Plaintiffs' unconscionability arguments, should be arbitrated because the agreement contains a clear, unambiguous delegation clause. The Court should compel individual arbitration for all Plaintiffs and stay the litigation. *See* 9 U.S.C. § 3; *Smith v. Spizzirri*, 601 U.S. 472 (2024).

Dated: April 25, 2025                    Respectfully submitted,


                                         /s Geoffrey Sigler

                                         **Gibson, Dunn & Crutcher LLP**

                                         Geoffrey Sigler, *Pro Hac Vice*
                                         Clare F. Steinberg, *Pro Hac Vice*
                                         1700 M Street, N.W.
                                         Washington, D.C.  20036-4504
                                         Telephone: 202.955.8500
                                         Facsimile: 202.467.0539
                                         Email:  GSigler@gibsondunn.com
                                         Email:  CSteinberg@gibsondunn.com

                                         Brian Anderson, *Pro Hac Vice*
                                         3161 Michelson Drive
                                         Suite 1200
                                         Irvine, CA  92612-4412
                                         Telephone: 949.451.3800
                                         Facsimile: 949.451.4220
                                         Email:  BAnderson@gibsondunn.com


                                         /s Darin M. Sands

                                         Darin M. Sands, WSBA No. 35865
                                         Heidi B. Bradley, WSBA No. 35759

                                         **Bradley Bernstein Sands LLP**
                                         2800 First Avenue, Suite 326

Seattle, WA 98121
Telephone: 206.337.6551
Email:  dsands@bradleybernstein.com
           hbradley@bradleybernstein.com

In accordance with LCR 7(e)(6), the signatory certifies that this motion contains 8,334 words, in compliance with the Local Civil Rules.

*Attorneys for Defendants*