THE HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

OSTERHAUS PHARMACY, INC., CAMMACK'S
PHARMACIES, INC. DBA JIM'S PHARMACY
AND HOME HEALTH, HARBOR DRUG CO.,
INC., VALU DRUGS INC., and MEDFORD
PHARMACY GROUP LLC DBA WEST MAIN
PHARMACY, on behalf of themselves and all
others similarly situated,

                  Plaintiffs,

    v.

UNITEDHEALTH GROUP INCORPORATED;
OPTUM, INC.; OPTUMRX, INC.; OPTUMRX
HOLDINGS, LLC,

                  Defendants.

NO. 2:23-cv-01944-RSL

**PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION TO COMPEL
INDIVIDUAL ARBITRATION**

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1

## <u>TABLE OF CONTENTS</u>

2

Page

I.     INTRODUCTION ............................................................................................ 1

II.    FACTUAL BACKGROUND............................................................................. 3

       A.     Plaintiffs' Claims ...................................................................... 3

       B.     Facts Relating to Procedural Unconscionability........................... 3

       C.     Facts Relating to Substantive Unconscionability ......................... 5

              1.     Optum's Arbitration Clause and the Delegation Clause are
                     Prohibitively Expensive ...................................................... 5

       D.     Facts About the Plaintiffs Inability to Pay the Excessive Costs to
              Arbitrate Under Optum's Clause. ............................................. 6

       E.     Additional Substantively Unconscionable Terms ........................ 9

III.   ARGUMENT ................................................................................................ 10

       A.     This Court Should Apply Washington Law to This Motion. .......... 11

       B.     Optum's Arbitration Clause And Delegation Clause Are Unenforceable
              Because They Are Procedurally Unconscionable. ....................... 13

       C.     This Court Should Refuse To Enforce Optum's Arbitration And
              Delegation Clauses, Because They Impose Prohibitive Costs Of
              Arbitration On The Independent Pharmacy Plaintiffs...................... 14

       D.     The Secrecy Provision of Optum's Arbitration Clause and Its Delegation
              Clause Is Substantively Unconscionable ................................... 15

       E.     Optum's Attorneys' Fee Provision Renders the Arbitration Clause and
              Delegation Clause Substantively Unconscionable ....................... 16

       F.     Optum's Provision Shortening the Statute of Limitations Is
              Substantively Unconscionable ................................................ 17

       G.     The Requirement In Optum's Arbitration and Delegation Clauses That
              Arbitrations Take Place In Inconvenient Locations Is Substantively
              Unconscionable ..................................................................... 19

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO
COMPEL INDIVIDUAL ARBITRATION - i
Case No. 2:23-cv-01944-RSL

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1

H.    This Court Should Strike Down Optum's Entire Arbitration And
Delegation Clauses .............................................................................. 20

IV.    CONCLUSION ................................................................................................ 23

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1

## TABLE OF AUTHORITIES

2

**Page**

Cases

3

4
*14 Penn Plaza LLC v. Pyett*,
    556 U.S. 247 (2009) ............................................................................ 16

5

6
*Adler v. Fred Lind Manor*,
    103 P.3d 773 (2004) ........................................................................... 16

7

8
*Alexander v. Anthony Intern., L.P.,*
    341 F.3d 256 (3rd Cir. 2003) .............................................................. 22

9
*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*,
    571 U.S. 49 (2013) .............................................................................. 11

10

11
*Bielski v. Coinbase, Inc.*,
    87 F.4th 1003 (9th Cir. 2023) ............................................................. 10

12

13
*Burnett v. Pagliacci Pizza, Inc.*,
    470 P.3d 486 (2020) ................................................................ 13, 20, 21

14

15
*Capili v. The Finish Line, Inc.*,
    699 Fed. App'x 620 (9th Cir. 2017) ............................................... 14, 15

16

17
*Carideo v. Dell, Inc.*,
    706 F. Supp.2d 1123 (W.D. Wash. 2010) ............................................ 12

18

19
*Chavarria v. Ralphs Grocery Co.*,
    733 F.3d 916 (9th Cir. 2013) .............................................................. 14

20
*Coinbase, Inc. v. Suski*,
    602 U.S. 143 (2024) ............................................................................ 10

21

22
*Connally v. Georgia*,
    429 U.S. 245 (1977) ............................................................................ 15

23

24
*Cordova v. World Finance Corp. of NM*,
    146 N.M. 256 (2009) .......................................................................... 22

25

26
*Damico v. Lennar Carolinas, LLC*,
    879 S.E.2d 746 (2022) ................................................................... 22, 23

27

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO
COMPEL INDIVIDUAL ARBITRATION - iii
Case No. 2:23-cv-01944-RSL

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

*Davies v. Waterstone Capitol Mgmt., LP,*
856 N.W.2d 711 (Minn. Ct. App. 2014) ................................................................. 11

*Davis v. O'Melveny & Myers,*
485 F.3d 1066 (9th Cir. 2007) .............................................................................. 15

*Dix v. ICT Group, Inc.,*
160 Wash. 2d 826 (2007) ..................................................................................... 12

*Future Select Portfolio Mgmt, Inc. v. Tremont Group,*
331 P.3d 29 (Wash. 2014) ..................................................................................... 12

*Gandee v. LDL Freedom Enterp., Inc.,*
293 P.3d 1197 (2013) ........................................................................................... 19

*Graham Oil Co. v. ARCO Prods Co.,*
43 F.3d 1244 (9th Cir. 19945) .............................................................................. 21

*Gray v. Rent–A–Center W., Inc.,*
314 Fed. App'x 15 (9th Cir. 2008) ....................................................................... 14

*Hayes v. Delbert Services Corp.,*
811 F.3d 666 (4th Cir. 2016) .......................................................................... 22, 23

*Heckman v. Live Nation Ent., Inc.,*
120 F.4th 670 (9th Cir. 2024)......................................................................... 20, 21

*Henning Nelson Const. Co. v. Fireman's Fund American Life Ins. Co.,*
383 N.W.2d 645 (Minn. 19086) ........................................................................... 11

*In re Juul Labs, Inc. Antitrust Litig.,*
555 F. Supp. 3d 932 (N.D. Cal. 2021) .................................................................. 18

*In re Murchison,*
349 U.S. 133 (1955) .............................................................................................. 15

*Ingle v. Circuit City Stores, Inc.,*
328 F.3d  1165 (9th Cir. 2003) ............................................................................. 18

*Jackson v. S.A.W. Ent. Ltd,*
629 F. Supp. 2d 1018 (N.D. Cal. 2009) ................................................................ 18

*Kauffman v. U-Haul Int'l, Inc.,*
2018 WL 4094959 (E.D. Pa. Aug. 28, 2018) ....................................................... 23

*Kelley v. Microsoft Corp.,*
    251 F.R.D. 544 (W.D.Wash.2008) ................................................................. 11

*Kristian v. Comcast Corp.,*
    446 F.3d 25 (1st Cir. 2006) ......................................................................... 17

*Lim v. TForce Logistics,*
    8 F.4th 992 (9th Cir. 2021) .................................................................. 20, 23

*McKee v. AT&T Corp.,*
    191 P.3d 845 (2008) ............................................................................ 12, 13

*Mendez v. Palm Harbor Homes,*
    45 P.3d 594 (2002) ...................................................................................... 14

*Morgan v. Sundance,*
    596 U.S. 411 (2022) .................................................................................... 10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
    460 U.S. 1 (1983) ........................................................................................ 10

*Nagrampa v. Mailcoups, Inc.,*
    469 F.3d 1257 (9th Cir. 2006) .................................................................. 19

*Narayan v. The Ritz-Carlton Dev. Co.,*
    400 P.3d 544 (Haw. 2017) .................................................................... 16, 22

*Newton v. Am. Debt Servs., Inc.,*
    854 F. Supp. 2d 712 (2012) ................................................................... 18, 19

*Newton v. Am. Debt Servs., Inc.,*
    549 Fed App'x 692 (9th Cir. 2013) ...................................................... 18, 19

*Nino v. Jewelry Exch., Inc.,*
    609 F.3d 191 (3rd Cir. 2010) ............................................................... 17, 22

*Pokorny v. Quixtar, Inc.,*
    601 F.3d 987 (9th Cir. 2010) .................................................................... 16

*Raab v. Nu Kin Enterprises, Inc.,*
    536 P.3d 695 (2023) .................................................................................... 12

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

*Raab v. Nu Kin Enterprises, Inc.*,
   565 P.3d 895 (Wash. 2025 ............................................................... 12

*Ramirez v. Charter Commc'ns, Inc.*,
   551 P.3d 520 (2024) ....................................................................... 18

*Rent-A-Center, W., Inc. v. Jackson*,
   561 U.S. 63 (2010) ......................................................................... 10

*Roceha v. Asurion, LLC*,
   724 F. Supp.3d 1213 (E.D. Wash. 2024) ............................................ 13

*Ronderos v. USF Reddaway, Inc.*,
   114 F.4th 1080 (9th Cir. Aug. 22, 2024) ..................................... *passim*

*Smith v. Spizziri*,
   601 U.S. 472 (2024) ....................................................................... 24

*Tadych v. Noble Ridge Construction, Inc.*,
   519 P.3d 199 (2022) .................................................................. 17, 18

*Ting v. AT&T*,
   319 F.3d 1126 (9th Cir. 2003) ........................................................ 16

*W. Filter Corp. v. Argan, Inc.*,
   540 F.3d 947 (9th Cir. 2008) .......................................................... 17

*Walters v. AAA Waterproofing, Inc*,
   211 P.3d 454 (2009) ....................................................................... 19

*Ward v. Village of Monroeville*,
   409 U.S. 57 (1972) ......................................................................... 15

*Willis v. Nationwide Debt Settlement Grp.*,
   878 F. Supp.2d 1208 (D. Or. 2012) ................................................. 20

*Woodward v. Emeritus Corp.*,
   368 P.3d 487 (2016) ....................................................................... 17

*Zuckerman v. TransAmerica Ins. Co.*,
   650 P.2d 441 (Ariz. 1982) .......................................................... 19, 20

*Zuver v. Airtouch Commc'ns, Inc.*,
   103 P.3d 753 (Wash. 2004) ............................................................ 15

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1

**Statutes**

2

15 U.S.C. § 15 ................................................................................................. 17

3

15 U.S.C. § 4304 ............................................................................................. 16

4

**Other Authorities**

5

6

Allan Farnsworth, *Farnsworth on Contracts* (2d ed. 1990) ................................... 21, 22

7

Restatement (Second) of Contracts § 183 (A.L.I. 1981) .......................................... 23

8

Restatement (Second) of Contracts § 184 (A.L.I. 1981) .......................................... 23

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

# I.    INTRODUCTION

Optum has driven locally-owned pharmacies like Plaintiffs out of business across the country, leading to the emergence of "pharmacy deserts" in rural and low-income communities.[1] Meanwhile, Optum has extracted record profits by imposing on Plaintiffs anticompetitive and unconscionable contract terms, including its arbitration clause.

Optum's arbitration provisions make it infeasible for the Plaintiffs to pursue their substantive statutory rights under the antitrust laws, and their other legal claims arising from the damage that Optum has illegally done to their financial well-being.

First, this issue should be governed by Washington law. Washington has a strong interest in making sure that small businesses in the state are not harmed by illegal conduct by out of state corporations.

Second, Optum's delegation clause and arbitration clause are procedurally unconscionable under Washington law. The record reflects that Optum did not give independent pharmacies such as Plaintiffs a meaningful choice, and given the pressures and power differential, this clause is unenforceable for this reason alone.

Third, Optum's arbitration clause and delegation clause both impose excessive costs to arbitrate upon the pharmacy plaintiffs.

The evidence here establishes that the costs of paying the arbitrators under Optum's clause would be at least $310,000 for each pharmacy, and that these costs could easily be twice that large.

For some comparatively large or wealthy pharmacies, this scheme might not prove prohibitively expensive. But it is for the Plaintiffs here. Their sworn declarations show that they cannot afford to pay the $310,000 plus arbitration administrative fees. And the same is true for

---

[1] Reed Abelson and Rebecca Robin, *The Powerful Companies Driving Local Drug Stores Out of Business*, N.Y. Times (Oct. 19, 2024), https://www.nytimes.com/2024/10/19/business/drugstores-closing-pbm-pharmacy.html (last visited Jan. 15, 2025).

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO
COMPEL INDIVIDUAL ARBITRATION - 1
Case No. 2:23-cv-01944-RSL

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    other provisions in Optum's delegation and arbitration clauses—they are grossly unfair *to these*

2    *Plaintiffs*.

3        Optum cites several cases enforcing its arbitration clause. But the correct inquiry is not

4    whether its delegation and arbitration clauses are enforceable *in some cases*; it is whether,

5    based on the evidence, they are enforceable against these Plaintiffs. They are not.

6        Apart from the excessive cost, Optum's arbitration clause has several other

7    substantively unconscionable features.  It has a sweeping secrecy provision, which renders both

8    the arbitration clause and the delegation clause unconscionable. In addition, it has a term

9    providing that a prevailing plaintiff may not recover their attorneys' fees, even though that is

10    provided for in the antitrust statutes. In a further move to favor itself and disfavor the

11    independent pharmacy plaintiffs, Optum's arbitration clause shortens the statute of limitations

12    to one year.  And finally, it requires these small pharmacy plaintiffs to travel to an inconvenient

13    location to have their cases heard.

14        Optum argues that if this Court agrees with the Plaintiffs that any terms of the

15    arbitration clause and delegation clause are unconscionable, that this Court should rewrite

16    those clauses for it.  With Optum's arbitration clause having multiple abusive and substantively

17    unconscionable provisions, rewriting the contract to fix this would end up creating a very

18    different contract from the one signed by the parties.  And if this Court is to address the

19    profound unfairness of excessive fees, it must strike down Optum's arbitration clause in its

20    entirety. The only ways to reduce the prohibitive expenses to the Plaintiffs would be to craft

21    new affirmative provisions (perhaps a term requiring Optum to bear all of the expenses of

22    arbitration, or limiting the clause to a single arbitrator), which would place the Court in the

23    posture of crafting and creating a whole new (enforceable) arbitration regime that bears no

24    resemblance to what the parties signed. This is counter to a wealth of law relating to the

25    severability of flawed arbitration provisions.

26

27

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

## II.    FACTUAL BACKGROUND

**A.    Plaintiffs' Claims**

Plaintiffs are five independent pharmacies that have brought vital medical services to their communities for decades. Pollock Decl., Ex. 2 ("Cammack Decl."), ¶2; Pollock Decl., Ex. 3 ("Osterhaus Decl.") ¶2; Pollock Decl., Ex. 4 ("Harrell Valu Drugs Decl.") ¶2; Pollock Decl., Ex. 5 ("Harrell Harbor Drug Decl.") ¶2; Pollock Decl., Ex. 6 ("Harrell West Main Decl.") ¶2. Defendant Optum is one of the largest pharmacy benefit managers ("PBM") in the nation. First Amended Complaint ("Complaint") ¶11. Plaintiffs allege that Optum has imposed large, unlawful penalties on them—penalties that have driven independent pharmacies out of business across the country. Optum has done so by taking advantage of its outsized power in the market for prescription drug services to impose contracts on Plaintiffs that violate the antitrust laws and contract doctrines.

Four key principles are central to Plaintiffs' allegations. First, Optum has substantial power in the market for the reimbursement of prescription drug services through Medicare Part D plans, *i.e.*, filling prescriptions. Complaint ¶86. Second, Optum abuses this market power to coerce pharmacies to provide ancillary services outside the scope of filling prescriptions. Complaint ¶92. Third, Optum further abuses its market power to force pharmacies to *pay* Optum for the opportunity to provide these ancillary services, in the form of post-point-of-sale penalties ("DIR fees" or "Penalties"), instead of receiving pay for those services. *Id.* Fourth, Optum acted in bad faith by setting these Penalties in an opaque, arbitrary, and irrational manner. Complaint ¶¶103, 156.

**B.    Facts Relating to Procedural Unconscionability**

Optum is one of the largest healthcare companies in the world. Complaint ¶11. PBMs control nearly every facet of the pharmaceutical filling and dispensing industry. They decide which pharmacies can dispense drugs in Part D Plan networks, which drugs those pharmacies will dispense, and the prices, discounts and other terms of sale applicable to reimbursement of

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO
COMPEL INDIVIDUAL ARBITRATION - 3
Case No. 2:23-cv-01944-RSL

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

pharmacies. *Id*. ¶40. Today, the "Big Three" PBMs – Caremark, Express Scripts, and Optum RX – control more than 80% of the prescriptions filled in the United States. *Id*. ¶44.

Optum's arbitration clause is a classic contract of adhesion—a contract drafted by the stronger party with greater bargaining power and imposed on a take-it-or-leave-it basis on the weaker party. Optum's contracts at issue in this case, including the arbitration clause and its delegation clause, are written by Optum alone, and cannot be negotiated. Osterhaus Decl. ¶5; Cammack Decl. ¶5; Harrell Valu Drugs Decl. ¶5; Harrell Harbor Drug Decl. ¶5; Harrell West Main Decl. ¶5. Independent pharmacies such as Plaintiffs must accept the terms in Optum's contracts to serve their network of patients. Also, as set forth in more detail below, there is an enormous power disparity between the parties here.

**Plaintiffs Had Less Experience and Business Acumen.** Plaintiffs have experience with running small businesses, but not with complex arbitration clauses.[2] They were unaware of and surprised by Optum's arbitration clause and its terms.[3]

**Optum Drafted the Non-Negotiable Contract and Never Explained the Terms to Plaintiffs.** Optum drafted the Provider Manual and never explained the terms to Plaintiffs. In fact, Plaintiffs did not even have a direct contact at Optum for questions.[4] Optum does not negotiate over the terms of its Provider Manual.[5]

**Plaintiffs Had No Alternative.** Plaintiffs had no choice except to contract with Optum.[6] It also would interrupt the continuity of care for their patients—an outcome at odds with the

---

[2] Osterhaus Decl. ¶6; Cammack Decl. ¶6; Harrell Valu Drugs Decl. ¶6; Harrell Harbor Drug Decl. ¶6; Harrell West Main Decl. ¶6.

[3] Osterhaus Decl. ¶6; Cammack Decl. ¶6; Harrell Valu Drugs Decl. ¶6; Harrell Harbor Drug Decl. ¶6; Harrell West Main Decl. ¶6. The FTC recently reported that independent pharmacies such as Plaintiffs "often lack the resources required to meaningfully review and make choices about continuing to do business with PBMs—even assuming they have another choice." See Off. of Pol'y Plan., Fed. Trade Comm'n, Pharmacy Benefit Managers: The Powerful Middlemen Inflating Drug Costs and Squeezing Main Street Pharmacies 53 (July 2024) ("FTC Report"), https://www.ftc.gov/system/files/ftc_gov/pdf/pharmacy-benefit-managers-staff-report.pdf (last visited Jan. 15, 2025). "PBMs also exert substantial influence over independent pharmacies, who struggle to navigate contractual terms imposed by PBMs that they find confusing, unfair, arbitrary, and harmful to their businesses." Id. at 1.

[4] Osterhaus Decl. ¶5; Cammack Decl. ¶5; Harrell Valu Drugs Decl. ¶5; Harrell Harbor Drug Decl. ¶5; Harrell West Main Decl. ¶5.

[5] *Id*.

[6] *See* Pollock Decl. Ex. 1 ("Caves Rep.") ¶¶35–36.

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO
COMPEL INDIVIDUAL ARBITRATION - 4
Case No. 2:23-cv-01944-RSL

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    Plaintiffs' professional goals as pharmacists to achieve the best patient outcomes.[7]

2    **C.    Facts Relating to Substantive Unconscionability**

3          1.    <u>Optum's Arbitration Clause and the Delegation Clause are Prohibitively
                 Expensive</u>

4

5          Optum's arbitration clause and its delegation clause both impose enormous costs to

6    arbitrate on the independent pharmacy plaintiffs.  The 2022 Pharmacy Provider Manual, Exhibit

7    A, Dkt. No. 63-1 ("2022 Provider Manual") provides, at p. 133, "All arbitrations contemplated by

8    this agreement shall be conducted by a panel of three (3) arbitrators all of whom must have at

9    least ten (10) years of legal experience in the area of health care law." *See also* 2025 Pharmacy

10   Provider Manual, Exhibit C, Dkt. No. 63-3 ("2025 Provider Manual") at p.127 (All arbitrations in

11   which the amount in controversy of all parties' claims totals more than $1,000,000 "shall be

12   conducted by a panel of three (3) arbitrators, all of whom must have at least ten (10) years of

13   legal experience in the area of healthcare law or be former judges.")   And who will bear the

14   costs of this quite expensive provision?  The Plaintiffs will bear half of them.  The clause further

15   provides:

16          "Regardless of which party prevails in the arbitration, each party
             shall be responsible for its own fees and expenses in connection
17           with the arbitration, including without limitation . . . fees of the
             arbitrator selected by that party, except that the parties shall be
18           responsible in equal shares for payment of the third arbitrator that
             was selected by the two arbitrators."   2022 Provider Manual at
19           134.[8]

20

21         The upshot of these terms will be very heavy arbitration fees for these Plaintiffs.  A

22   panel of three arbitrators will spend many hours deciding at the expense of the parties whether

23   the arbitration clause is enforceable. Senior experienced arbitrators of this sort, including

24   retired judges, typically charge $500-$800 per hour. Pollock Decl., Ex. 7 ("Salsbury Decl.") ¶3.

25   For a case of this sort, the range of time that the three arbitrators would spend spans 200 to

26   ---
     [7] Osterhaus Decl. ¶17; Cammack Decl. ¶20; Harrell Valu Drugs Decl. ¶20; Harrell Harbor Drug Decl. ¶20; Harrell
     West Main Decl. ¶20.
27   [8] *See also* 2025 Provider Manual at 128 (same).

400 hours. *Id*. at ¶4. The typical administrative costs to arbitrate are $10,000 - $20,000. *Id*. at ¶5. As a result, the lowest fees for arbitration one would expect here would be $310,000 ($500 per hour multiplied by 200 hours, multiplied by three arbitrators, plus $10,000 in administrative costs), but the evidence shows that the arbitration fees could easily run twice as high ($600,000).

Todd Mizeski has conducted arbitrations of disputes between commercial parties, sometimes involving issues of market power and contracts. Pollock Decl. Ex. 8 ("Mizeski Decl.") ¶2. He explains that AAA arbitrators with extensive experience are likely to charge more than a typical arbitrator, and in a range between $400 and $1,200 per hour. *Id*. ¶¶4–5. Mizeski also explains that arbitrators often charge for a full day when there is a hearing, and that "arbitrations involving complex commercial disputes involving allegations regarding violations of federal and state laws and regulations, breaches of contract and competition issues will typically involve at least 5 to 7 pre-hearing conferences with the panel of 3 arbitrators." *Id*. ¶8. Mizeski's testimony confirms that Optum's arbitration clause is prohibitively expensive.

D.    **Facts About the Plaintiffs' Inability to Pay the Excessive Costs to Arbitrate Under Optum's Clause.**

As shown in detail below, none of the small pharmacy Plaintiffs can afford to arbitrate under Optum's pay-to-play arbitration regime.

***Osterhaus Pharmacy.*** Osterhaus Pharmacy, a community pharmacy proudly serving the town of Maquoketa, Iowa since 1965, often earned less than $1,000 in annual profits during its final years of operation. Osterhaus shut its doors in 2022, in part because of the financial pressure imposed by Optum's Penalties. Osterhaus Decl. ¶¶2, 9-11, 18.

Detailed evidence shows that Osterhaus did not have the funds to cover arbitration under Optum's onerous clause. Osterhaus operated on thin margins each year. *Id.* ¶8. This is common for small pharmacies. They typically have a high "cost of goods sold" based on their drug acquisition costs. *Id.*

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO
COMPEL INDIVIDUAL ARBITRATION - 6
Case No. 2:23-cv-01944-RSL

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    For example, in 2019, Osterhaus' gross sales were $6,398,790, and its cost of goods sold

2    was $4,914,666, leaving $1,484,124 to cover all other expenses. After paying its expenses—

3    including wages for more than a dozen FTE staff, benefits, payroll taxes, building rent, IT, and

4    other costs—the pharmacy earned $937 in net income from sales in 2019. *Id*. ¶9. In 2020 and

5    2021, Osterhaus' gross sales and cost of goods sold were in a similar range, resulting in a loss of

6    $54,941 in 2020, and net profits of $176,378 in 2021. *Id*. ¶¶10–11. During this period, Optum's

7    DIR fees grew rapidly, making it nearly impossible for Osterhaus to project expenses and

8    operate the business. *Id*. ¶12.

9    In any given month, Osterhaus may have held up to a few hundred thousand dollars in

10    cash reserves, which were offset by significant liabilities, including accounts payable and

11    accrued wages. *Id.* ¶13. Osterhaus did not have the funds to initiate arbitration against Optum,

12    and Optum does not adjust costs based on hardship for a pharmacy. *Id.* ¶¶15–16.

13    ***Jim's Pharmacy.*** Jim's is also unable to pay the costs of arbitration imposed by Optum.

14    Jim's is a family-owned pharmacy that opened its doors in Port Angeles, Washington in 1983.

15    Cammack Decl. ¶2. Jim's operates on thin margins each year. *Id.* ¶8. For example, in 2019, Jim's

16    gross income from sales was $11,119,494 and its cost of goods sold was $8,111,164. *Id*. ¶9.

17    After paying operating expenses (including wages for approximately 33 FTE staff, benefits,

18    payroll taxes, building rent, advertising, computers, software, and other expenses) the

19    pharmacy earned $105,964 in net ordinary income in 2019. *Id*. It lost $238,666 in 2020, earned

20    $415,231 in 2021, earned $475,773 in 2022, and lost $281,411 in 2023. *Id*. ¶¶10–13. The

21    increase in net profits in 2021–2022 was due to the high number of Covid services provided

22    that year. *Id.* ¶¶11–12. Jim's is located near one of the only entry points via ferry into Canada,

23    which at the time required PCR tests. *Id.* In 2024, Jim's earned $373,731 in net ordinary income.

24    Our increase in profits in 2024 was due in large part to being designated as a "Critical Access

25    Pharmacy" by Medicaid, which is a pharmacy that is eligible for some additional financial

26    support because it provides critical services to populations in rural or underserved areas.

27

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO
COMPEL INDIVIDUAL ARBITRATION - 7
Case No. 2:23-cv-01944-RSL

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    In any given month, Jim's typically held a few hundred thousand dollars in cash on hand,

2  which was offset by significant liabilities and expenses, including accounts payable and accrued

3  wages. *Id.* ¶17. Jim's does not have the funds to pay for arbitration with Optum. *Id*. ¶17.

4    ***Valu Drugs.***  Valu Drugs is a locally-owned pharmacy in Montesano, Washington that

5  has proudly served its community since 1960. Harrell Valu Drug Decl. ¶2. Valu Drugs is also

6  unable to pay the costs of arbitration imposed by Optum. Valu Drugs operates on thin margins

7  each year. *Id.* ¶8. For example, in 2019, Valu Drugs' gross income from sales was $5,709,170

8  and its cost of goods sold was $4,204,807. *Id*. ¶9. After paying operating expenses (including

9  wages and benefits staff, benefits, payroll taxes, building rent, utilities, IT services, and other

10 expenses) the pharmacy earned $145,457 in net ordinary income in 2019. *Id*. It earned $24,970

11 in 2020, $240,987 in 2021, $350,818 in 2022, $602,531 in 2023, and it **lost** $60,164 in 2024. *Id*.

12 ¶¶10-14.

13    In any given month, Valu Drugs typically held a few hundred thousand dollars in cash on

14 hand, which was offset by significant liabilities and expenses. *Id.* ¶16. Valu Drugs does not have

15 the funds to pay for arbitration with Optum. *Id*. ¶17.

16    ***Harbor Drug Co.***  Harbor Drug is a community pharmacy that has served Hoquiam,

17 Washington for over 100 years. Harrell Harbor Drug Decl. ¶2. It is a pillar of healthcare and

18 community support in the small community of Hoquiam, supporting local schools, a historic

19 community theater, and a non-profit museum. *Id.*

20    Harbor Drug is also unable to pay the costs of arbitration imposed by Optum. Harbor

21 Drug operates on thin margins each year. *Id.* ¶8. For example, in 2019, its gross income from

22 sales was $1,468,407 and its cost of goods sold was $896,879. *Id*. ¶9. After paying operating

23 expenses (including wages and benefits staff, advertising rent, expenses, and other costs) the

24 pharmacy **lost** $126,513 in net ordinary income in 2019. *Id*. It **lost** $102,978 in 2020, earned

25 $7,565 in net ordinary income in 2021, earned $271,068 in 2022, $48,712 in 2023, and **lost**

26 $6,338 in 2024.

27

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO
COMPEL INDIVIDUAL ARBITRATION - 8
Case No. 2:23-cv-01944-RSL

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    In any given month, Harbor Drug typically held a few hundred thousand dollars in cash

2    on hand, which was offset by significant liabilities and expenses. *Id.* ¶16. Harbor Drug does not

3    have the funds to pay for arbitration with Optum. *Id*. ¶17.

4    ***West Main Pharmacy.*** West Main Pharmacy is an independent pharmacy that has

5    served the Rogue Valley community for over 60 years. Harrell West Main Decl. ¶2. Many of the

6    pharmacy's staff members have been with West Main for decades—some for over 40 years. *Id.*

7    West Main is also unable to pay the costs of arbitration imposed by Optum. West Main

8    operates on thin margins each year. *Id.* ¶8. For example, in 2019, its gross income from sales

9    was $1,471,286 and its cost of goods sold was $1,172,343. *Id*. ¶9. After paying operating

10   expenses (including wages and benefits staff, rent, repairs and maintenance, computer and

11   internet, and other costs) the pharmacy earned $34,384 in net ordinary income in 2019. It

12   earned $117,504 in net ordinary income in 2020, **lost** $1,754 in 2021, earned $244,195 in net

13   ordinary income in 2022, earned $88,272 in 2023, and earned $259,728 in net ordinary income

14   in 2024. *Id*. ¶¶9-14.

15   In any given month, West Main typically held a few hundred thousand dollars in cash on

16   hand, which was offset by significant liabilities and expenses. *Id.* ¶16. West Main does not have

17   the funds to pay for arbitration with Optum. *Id*. ¶17.

18   **E.    Additional Substantively Unconscionable Terms**

19   Under the antitrust statutes, a prevailing plaintiff is entitled to receive an award of

20   attorneys' fees.  Not so under Optum's arbitration clause.  In addition to requiring each party to

21   bear one half of the expenses of the three arbitrators, Optum's arbitration clause also provides

22   that regardless of who prevails, that each party must bear "its own attorney's fees." 2022

23   Provider Manual at 134; 2025 Provider Manual at 128.

24   The confidentiality provision in Optum's arbitration clause is sweeping. It provides that

25   "The arbitration and the arbitrators' award shall be maintained by the parties as strictly

26   confidential, except as is otherwise necessary to confirm, vacate, or enforce the award or as

27   ordered by a court in connection with judicial proceedings to confirm, vacate or enforce the

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO
COMPEL INDIVIDUAL ARBITRATION - 9
Case No. 2:23-cv-01944-RSL

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    award. The parties shall take steps to preserve the confidential nature of the award even in

2    judicial proceedings to confirm, vacate or enforce the award, including by seeking to file the

3    award under seal." 2022 Provider Manual at 135-36; 2025 Provider Manual at 128.

4         Unlike a typical arbitration clause that provides that the arbitration may take place

5    where the plaintiff lives, Optum's arbitration clause specifies that "Any arbitration proceeding

6    under this Agreement shall be conducted in Los Angeles County or Orange County, California."

7    2022 Provider Manual at 133, or, for the 2025 Provider Manual, in Hennepin County,

8    Minnesota. 2025 Provider Manual at 127.

9         Finally, Optum's arbitration clause seems to shorten the statute of limitations, providing

10   that "the party wishing to pursue the Dispute must initiate the arbitration within one (1) year

11   after the date on which the written notice of the Dispute was given or shall be deemed to have

12   waived its right to pursue the Dispute in any forum." 2022 Provider Manual at 133; *see also*

13   2025 Provider Manual at 127 (same).

14                                    **III.    ARGUMENT**

15        Historically, the Supreme Court recognized a "liberal federal policy favoring arbitration."

16   *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). But the Court

17   recently clarified that "the federal policy is about treating arbitration contracts like all others,

18   not about fostering arbitration." *Morgan v. Sundance*, 596 U.S. 411, 418 (2022). *See Coinbase,*

19   *Inc. v. Suski*, 602 U.S. 143, 148 (2024) (citing *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67

20   (2010) ("The FAA . . . places arbitration agreements on an equal footing with other contracts").

21   "Under the [FAA], generally applicable contract defenses, including unconscionability, may

22   invalidate an arbitration agreement." *Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080, 1089

23   (9th Cir. Aug. 22, 2024) (citations omitted).

24        An arbitration clause may delegate certain issues to an arbitrator, including whether an

25   arbitration clause itself is unconscionable, if it does so clearly and unmistakably. *Rent–A–*

26   *Center, W., Inc.,* 561 U.S. 63. When a party "specifically challenges the delegation provision

27   under Section 2 of the FAA, the federal court must consider the challenge before ordering

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO
COMPEL INDIVIDUAL ARBITRATION - 10
Case No. 2:23-cv-01944-RSL

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  compliance with it." *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1009 (9th Cir. 2023) (citations and

2  quotation omitted). If a court finds that both a delegation clause and an arbitration clause are

3  unconscionable for the same reasons, it should refuse to enforce both provisions.

4  **A.    This Court Should Apply Washington Law to This Motion.**

5          A federal court sitting in diversity applies the choice-of-law rules of its forum state to

6  determine which substantive law controls. *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of*

7  *Tex.*, 571 U.S. 49, 65 (2013). Washington uses a two-step approach to choice-of-law questions.

8  *Kelley v. Microsoft Corp.*, 251 F.R.D. 544, 550 (W.D.Wash.2008). First, courts determine whether

9  an actual conflict between Washington and other applicable state law exists. *Id.* A conflict exists

10  when the various states' laws could produce different outcomes on the same legal issue. *Id.* In

11  the absence of a conflict, Washington law applies. *Id.* If a conflict exists, courts then determine

12  the forum or fora that have the "most significant relationship" to the action to determine the

13  applicable law. *Id.*

14          Optum's arbitration clause, which it drafted, does not have a choice-of-law provision.

15  Notwithstanding this absence, Optum argues to this Court that it should hold that Minnesota

16  law applies to this motion.  Optum argues that this is sensible because Optum is headquartered

17  in Minnesota, but then gives away the game by essentially saying that Minnesota courts never

18  find any arbitration clause to be unconscionable (implying that this is true no matter what the

19  terms might be in a clause).[9] The main feature of Minnesota law appears to be that it is fairly

20  undeveloped with respect to unconscionability challenges. *E.g., Davies v. Waterstone Capitol*

21  *Mgmt., LP*, 856 N.W.2d 711, 718 (Minn. Ct. App. 2014) ("There is little guidance in the

22  Minnesota caselaw on how to determine whether a contractually shortened limitations period

23  is reasonable.")

24
_____
25  [9] It is not actually clear that Minnesota law is as grim as Optum postulates. One of the substantively
    unconscionable terms in Optum's arbitration clause is a provision shortening the statute of limitations to a year.
26  While Minnesota courts have enforced some contracts with shortened statute of limitations, they also sometimes
    have gone the other way. *See Henning Nelson Const. Co. v. Fireman's Fund American Life Ins. Co.*, 383 N.W.2d 645
27  (Minn. 1986) (affirmed lower court holding that a one-year limitation on legal actions contained in an insurance
    policy was unreasonably short, to be decided on a case by case basis).

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO
COMPEL INDIVIDUAL ARBITRATION - 11
Case No. 2:23-cv-01944-RSL

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    But three of the five independent pharmacy plaintiffs in this case are based in

2  Washington, another is incorporated in Washington (and the fifth is in Iowa), and the proof of

3  their claims – what Optum has done to them, and what effect it has had on them – will involve

4  witnesses and entities located in Washington.  And as the following argument will establish,

5  Washington law is very clear that a number of the unfair aspects of Optum's arbitration clause

6  and delegation clause are plainly unconscionable and unenforceable in Washington as being

7  rigged in Optum's favor.

8    In such settings, courts applying Washington law have generally rejected proposals to

9  strip Washington residents of their rights by applying the law of forums that would permit them

10 to be fleeced. In *Raab v. Nu Kin Enterprises, Inc.*, 536 P.3d 695 (2023), aff'd, 565 P.3d 895

11 (Wash. 2025), independent contractors sued a company headquartered in Utah. The Court held

12 that Washington law would govern the dispute, notwithstanding a Utah choice of law clause,

13 for several reasons. The contractors learned of the terms of their agreements, and performed

14 their work under the agreements, largely in the state of their residence, which was Washington

15 for most of them. In holdings that strongly apply to this case, the *Raab* court noted that

16 Washington had a "vital" interest in ensuring fair business practices within its boundaries and

17 had stronger protections against unconscionable dispute resolution terms.  In *Future Select*

18 *Portfolio Mgmt, Inc. v. Tremont Group*, 331 P.3d 29 (2014), similarly, an investment fund in

19 Washington was induced to invest in Bernie Madoff's Ponzi scheme. The Washington Supreme

20 Court held that Washington law would apply, as the investor lived here.  Similarly, in *Carideo v.*

21 *Dell, Inc.*, 706 F. Supp.2d 1123, 1128-29 (W.D. Wash. 2010), the court applied Washington law

22 despite the parties' contractual choice-of-law provision that would apply Texas law, where

23 Washington and Texas conflicted and Washington possessed the more significant relationship

24 to the parties where the computer users lived in Washington and Dell was based in Texas.

25    Finally, Optum's position that Minnesota law places no limits on what remedy- and

26 right-stripping provisions might be placed in an arbitration clause cuts against its effort to have

27 this Court select Washington law.  *See Dix v. ICT Group, Inc*., 160 Wash. 2d 826, 837 (2007) ("a

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO
COMPEL INDIVIDUAL ARBITRATION - 12
Case No. 2:23-cv-01944-RSL

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    forum selection clause that seriously impairs a plaintiff's ability to bring suit to enforce the CPA

2    violates the public policy of this state"); *McKee v. AT&T Corp.*, 191 P.3d 845 (2008) (where New

3    York choice-of-law provision would enforce an arbitration clause that included provisions that

4    would be unconscionable under Washington law, the court refused to enforce the choice-of-

5    law provision).

6    **B.    Optum's Arbitration Clause And Delegation Clause Are Unenforceable Because They
         Are Procedurally Unconscionable.**

7

8         Under Washington law, either a showing of procedural or substantive unconscionability

9    is sufficient to void an agreement. *Burnett v. Pagliacci Pizza, Inc.*, 470 P.3d 486, 494 (2020).

10        As set forth in the Factual Background, there is a great deal of evidence that Optum's

11   arbitration clause was promulgated in procedurally unconscionable manner. Optum's

12   arbitration clauses are clearly contracts of adhesion, meaning they are contracts written by the

13   stronger party and imposed on a take-it-or-leave-it basis. While this is not grounds for

14   invalidating the terms by itself, *Burnett*, 470 P.3d at 495, it is a relevant factor under

15   Washington law.  But as the Caves' Report demonstrates, the independent pharmacy plaintiffs

16   did not have a meaningful choice about accepting Optum's arbitration or delegation clause,

17   Caves Rep. ¶¶9-11, 18-22, 28-40, and that is the key element to procedural unconscionability

18   under Washington law.  *Burnett*, 470 P.3d at 495.  Washington law will particularly find

19   procedural unconscionability when there are undue pressures on the weaker party to sign a

20   document. In *Roceha v. Asurion, LLC*, 724 F. Supp.3d 1213, 1221 (E.D. Wash. 2024), the Court

21   found procedural unconscionability under Washington law where an employee "felt

22   constrained by the time pressure to sign the documents so that the cohort of new employees

23   could continue with the training process." While this case did not involve time pressures

24   specifically, the main point of Caves' expert testimony is that there was a great deal of pressure

25   on the independent pharmacies to submit to Optum's terms, and thus this case fits within the

26   type of concern addressed in *Roceha*.

27

1      Even in jurisdictions where procedural unconscionability is not sufficient to invalidate an

2  entire contract, it does play a significant role in how courts evaluate the enforceability of a

3  contract. *See, e.g., Ronderos*, 114 F.3d at 1094 ("Because we find at least a moderate degree of

4  procedural unconscionability, closer scrutiny of [the agreement's] overall fairness is required.")

5  (internal quotation omitted).

6  **C.      This Court Should Refuse To Enforce Optum's Arbitration And Delegation Clauses,
           Because They Impose Prohibitive Costs Of Arbitration On The Independent Pharmacy
7          Plaintiffs**

8          As set forth in the Factual Background, Optum's arbitration clause would require each

9  independent pharmacy to pay arbitration fees of $310,000 to $600,000 to have their cases

10 heard.  None of the Plaintiffs here would be able to bring a claim against Optum if required to

11 pay these arbitration costs.

12         Optum's arbitration clause and delegation clause are substantively unconscionable and

13 unenforceable under these circumstances. *See, e.g., Mendez v. Palm Harbor Homes*, 45 P.3d

14 594 (2002), <u>as amended</u> (June 6, 2002) (arbitration clause unenforceable that imposed filing fee

15 twenty times higher than the filing fee in court, and where affidavit showed plaintiff could not

16 afford the high arbitration fees).

17         Washington law in this respect is consistent with the Ninth Circuit's repeated decisions

18 involving prohibitively expensive arbitration clauses. In *Capili v. The Finish Line, Inc.*, for

19 example, the Court found an arbitration clause in an employment contract was unconscionable,

20 where it required a retail employee making $15 per hour to pay up to $10,000 at the outset of

21 arbitration, not including the fees and costs for legal representation. This "effectively

22 foreclos[es] vindication of employees' rights." 699 Fed. App'x 620, 622 (9th Cir. 2017). Similarly,

23 in *Chavarria v. Ralphs Grocery Co.*, the Court found that an arbitration clause would prevent the

24 plaintiffs from effectively vindicating their rights when "administrative and filing costs, even

25 disregarding the cost to prove the merits, effectively foreclose pursuit of the claim." 733 F.3d

26 916, 927 (9th Cir. 2013). *See also Gray v. Rent–A–Center W., Inc.*, 314 Fed. App'x 15, 16 (9th Cir.

27

1    2008) (costs of arbitration "sufficiently onerous to deter [employee] from vindicating his claim,"

2    where he earned the minimum wage, and the arbitration expenses were shown to be $7,500

3    (internal quotations omitted)).  *See also*, *e.g.*, *Capili*, 699 Fed. App'x at 622 (where arbitration

4    clause imposed prohibitive costs upon a plaintiff, the clause is not enforced); *Chavarria*, 733

5    F.3d at 927 (same); *Gray*,314 Fed. App'x at 16 (same).

6        It should also be noted that it would be unconscionable to delegate Plaintiffs' challenge

7    to Optum's excessive arbitration fees to the arbitrators, because this would involve asking three

8    AAA arbitrators if their own income was excessive.  This would violate the core principle that

9    "no man is permitted to try cases where he has an interest in the outcome." *In re Murchison*,

10   349 U.S. 133, 136 (1955). In *Ward v. Village of Monroeville*, 409 U.S. 57, 61-62 (1972), the Court

11   held that it was unconstitutional for a mayor to levy fines against traffic violators when he had

12   an inherence incentive to impose fines due to his supervision of the village's finances. Similarly,

13   in *Connally v. Georgia*, 429 U.S. 245, 251 (1977), a system in which a justice of the peace was

14   paid a prescribing fee for issuing each search warrant but received nothing for denying a

15   warrant was held to violate due process. Any arbitrator has a built-in incentive to rule against a

16   challenge to their own fees. Having a delegation clause let the arbitrators pass upon their own

17   compensation is an even more direct conflict of interest in than *Ward* or *Connally*.

18   **D.    The Secrecy Provision of Optum's Arbitration Clause and Its Delegation Clause Is
         Substantively Unconscionable**

19

20       As set forth in the Factual Background, Optum's arbitration clause imposes a sweeping

21   confidentiality burden on the pharmacies who must accept its arbitration clause. Such

22   confidentiality provisions are unconscionable if they favor the defendant, are too broad, and in

23   effect impose a gag order on plaintiffs such that they are "unable to mitigate the advantages

24   inherent in being a repeat player." *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1078 (9th Cir.

25   2007). Accordingly, the Washington Supreme Court has held that this kind of secrecy provision

26   is substantively unconscionable and thus unenforceable.  *See Zuver v. Airtouch Commc'ns, Inc.*,

27   103 P.3d 753, 775 (2004)

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO
COMPEL INDIVIDUAL ARBITRATION - 15
Case No. 2:23-cv-01944-RSL

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1       All three of the factors that render a secrecy provision unconscionable are present here.

2  The secrecy favors Optum, which will know what has happened in arbitrations; the

3  confidentiality provision is extremely broad; and it gags plaintiffs to a degree that favors the

4  repeat player, Optum.[10] It is important to further note that Washington law is not an outlier in

5  this respect, a wealth of precedent holds that such sweeping secrecy is substantively

6  unconscionable. *See, e.g., Ting v. AT&T*, 319 F.3d 1126, 1152 (9th Cir. 2003) ("AT&T has placed

7  itself in a far superior legal posture by ensuring that none of its potential opponents have

8  access to precedent while, at the same time, AT&T accumulates a wealth of knowledge");

9  *Pokorny v. Quixtar, Inc.,* 601 F.3d 987 (9th Cir. 2010) (confidentiality provision unconscionable);

10  *Narayan v. The Ritz-Carlton Dev. Co.*, 400 P.3d 544, 556 (2017) (same).

11  **E.    Optum's Attorneys' Fee Provision Renders the Arbitration Clause and Delegation Clause Substantively Unconscionable**

13       As set forth in the Factual Background, Optum's arbitration clause provides that each

14  party must bear their own attorneys' fees, even if they prevail in litigation. This provision is a

15  marked departure from the underlying law that would normally apply to this case. Plaintiffs

16  here make claims under the antitrust laws. They provide for plaintiffs to receive attorney's fees

17  and costs if they prevail, 15 U.S.C. § 4304(a)(1).

18       But while the Federal Arbitration Act provides that parties may choose to move their

19  disputes from court to another forum that enables them to vindicate their rights, arbitration

20  clauses are not permitted to be used as a vehicle to strip parties of their rights under federal

21  statutes.  The U.S. Supreme Court has repeatedly warned that arbitration clauses may not be

22  used to work a "substantive waiver of federally protected civil rights." *14 Penn Plaza LLC v.*

23  *Pyett*, 556 U.S. 247, 273 (2009).  Accordingly, numerous courts have struck down arbitration

24  clauses that follow Optum's approach and limit the attorneys' fees available to prevailing

25  plaintiffs. Washington law is very strong in this respect. *See Adler v. Fred Lind Manor*, 103 P.3d

[10] This provision also makes the delegation clause unenforceable, as Plaintiffs cannot learn how arbitrators have ruled with respect to any of the abusive provisions in Optum's clause, but Optum has this information.

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO
COMPEL INDIVIDUAL ARBITRATION - 16
Case No. 2:23-cv-01944-RSL

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

773 (2004) (an attorney fee provision requiring each party to bear their own costs and attorneys' fees was substantively unconscionable because it undermined the employees' rights to attorneys' fees under the Washington Law Against Discrimination); *Woodward v. Emeritus Corp.*, 368 P.3d 487   (2016) (provision requiring each party to be responsible for its own legal fees was substantively unconscionable and thus unenforceable).

And again, it is important to note that the Washington precedent that governs here is consistent with law throughout the country. *E.g., Kristian v. Comcast Corp.*, 446 F.3d 25, 53 (1st Cir. 2006) (arbitration clause that changed the attorneys' fees regime under the antitrust laws, by barring a prevailing plaintiff from recovering attorneys' fees, prevented "Plaintiffs from vindicating their statutory rights in arbitration," and provision was unenforceable); *Nino v. Jewelry Exch., Inc.*, 609 F.3d 191, 203 (3rd Cir. 2010) ("Prohibitions in arbitration clauses requiring parties to bear their own attorneys' fees, costs and expenses work to the disadvantage of an employee needing to obtain legal assistance . . . [and] also undermine the legislative intent behind fee-shifting statutes like Title VII") (quotations omitted).

**F.      Optum's Provision Shortening the Statute of Limitations Is Substantively Unconscionable**

Optum's arbitration clause dramatically shortens the statute of limitations (and thus, attempts to dramatically weaken the protections of the antitrust laws for the small pharmacy plaintiffs). Optum reduces the statute of limitations from four to one year. *Compare* 15 U.S.C. §15(b) (setting statute of limitations for federal antitrust claims to four years) *with* 2025 Provider Manual, at 126-27 (Optum arbitration clause shortening statute of limitations to one year). Its application would quarter Plaintiffs' damages, meaning that the maximum any plaintiff could receive for violation of their substantive rights under the antitrust laws would be one fourth of their claim, which is a far cry from "effectively vindicating" those rights.

As explained above, it is illegal and improper for an arbitration clause to strip parties of substantive rights that they have under the federal antitrust laws.  Accordingly, contractual

1  agreements that shorten the statute of limitations are disfavored because they "derog[ate]"

2  statutory intent. *W. Filter Corp. v. Argan, Inc.*, 540 F.3d 947, 953–954 (9th Cir. 2008).

3      Washington law is very clear that this term of Optum's arbitration clause is also

4  substantively unconscionable. In *Tadych v. Noble Ridge Construction, Inc.*, 519 P.3d 199 (2022),

5  a Court of Appeals struck down a one year statute of limitations provision as substantively

6  unconscionable where the plaintiffs were laypersons, and the defendant had drafted the

7  contract, which is certainly true here.  The court also noted that the one-year limitation

8  provision had not been bargained for, negotiated, also plainly applicable here. And finally, the

9  court noted that the limitation provision was "included within one of three paragraphs on

10  warranties, 10 pages into a 14-page contract. The waiver is in no sense prominent," where here

11  it appeared on page 135 of the dense Provider Manual. *Id.* at 204.

12      In addition, the Ninth Circuit has strongly supported this conclusion. *See Ingle v. Circuit

13  City Stores, Inc.*, 328 F.3d  1165, 1175 (9th Cir. 2003) (finding shortened statute of limitations

14  provision for arbitrating claims substantively unconscionable because "the benefit of this

15  provision flows only to" the defendant; also, one year limitations provision substantively

16  unconscionable because it deprives plaintiffs of the benefit of the continuing violation and

17  tolling doctrines under federal and state discrimination laws); *In re Juul Labs, Inc. Antitrust

18  Litig.*, 555 F. Supp. 3d 932, 955 (N.D. Cal. 2021) (one-year limitation in arbitration clause is

19  substantively unconscionable); *Newton v. Am. Debt. Servs., Inc.*, 854 F. Supp. 2d 712,732 ("Both

20  California courts and the Ninth Circuit have found that shortening statutorily-mandated statute

21  of limitations contributes to a finding of substantive unconscionability."), *aff'd* 549 Fed. App'x

22  692, 694 (9th Cir. 2013) (noting in unconscionability discussion that "the arbitration agreement

23  limits damages otherwise available to Newton under statute"); *Jackson v. S.A.W. Ent. Ltd*, 629 F.

24  Supp. 2d 1018, 1029 (N.D. Cal. 2009) (provision in arbitration clause "significantly shorten[ing]

25  the limitations period" is substantively unconscionable"). *Accord. Zuckerman v. TransAmerica

26  Ins. Co.*, 650 P.2d 441, 449 (Ariz. 1982) (provision in insurance policy shortening the limitations

27

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO
COMPEL INDIVIDUAL ARBITRATION - 18
Case No. 2:23-cv-01944-RSL

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1   period not enforced where it "would work an injustice to the plaintiff," was in an "adhesive"

2   contract, and would "cause a forfeiture of a patently valid claim.").

3       Finally, even if a term shortening the statute of limitations does not bar a given plaintiff,

4   it is still substantively unconscionable because unconscionability is judged at "the time when

5   the contract was made," and not "in hindsight." *Ramirez v. Charter Commc'ns, Inc.*, 551 P.3d

6   520, 537 (2024).

7   **G.    The Requirement In Optum's Arbitration and Delegation Clauses That Arbitrations
        Take Place In Inconvenient Locations Is Substantively Unconscionable**

8

9       Optum's 2022 Provider Manual requires that any arbitration must take place in Los

10  Angeles or Orange County, California. 2022 Provider Manual at 133. A more recent version of

11  this contract requires that any arbitration must take place in Minnesota. 2025 Provider Manual

12  at 127. But four of the five independent pharmacies who are the named Plaintiffs in this case

13  are located in the State of Washington, and the fifth is in Iowa. And as the Statement of Facts

14  also establishes, none of these five pharmacy plaintiffs is in a position to pay substantial out of

15  pocket expenses to conduct an arbitration.  Simply put, none of them can afford to travel to

16  either L.A. or Minnesota to have their cases heard.  Such a term is clearly unenforceable under

17  Washington law. *See, e.g., Gandee v. LDL Freedom Enterp., Inc.*, 293 P.3d 1197 (2013)

18  (arbitration clause requiring consumer to arbitrate in California substantively unconscionable

19  and unenforceable where there was sufficient evidence that it was cost-prohibitive); *Walters v.*

20  *AAA Waterproofing, Inc*, 211 P.3d 454 (2009) (arbitral forum in Denver was inaccessible even

21  though it was the employer's principal place of business).

22      Once again, Washington law is in accord with numerous other courts that have also held

23  that such provisions are substantively unconscionable. *See Nagrampa v. Mailcoups, Inc*., 469

24  F.3d 1257, 1289 (9th Cir. 2006) (en banc) (arbitration clause in franchise contract substantively

25  unconscionable where it "would require a one-woman franchisee who operates from her home

26  to fly across the country to arbitrate a contract signed and performed in California"); *Lim v.*

27  *TForce Logistics*, 8 F.4th 992, 1002 (9th Cir. 2021) (provision in employment contract requiring

1   Southern California resident who made $600 a week to arbitrate in Dallas made the delegation

2   clause "prohibitively costly") (quotations omitted); *Newton*, 549 Fed App'x 692  (arbitration

3   agreement in consumer case substantively unconscionable where it "requires Newton, who

4   resides in California, to arbitrate in Tulsa, Oklahoma"); *Willis v. Nationwide Debt Settlement*

5   *Grp.*, 878 F. Supp.2d 1208, 1220-1221 (D. Or. 2012) (arbitration clause had a forum selection

6   clause requiring Oregon resident to arbitrate in California was so "gravely difficult and

7   inconvenient" that for all practical purposes the plaintiffs would be deprived of its day in court.

8   "It is fair to conclude on this record that plaintiffs are not capable of paying for and

9   participating in arbitration in San Joaquin County, California").

10  **H.      This Court Should Strike Down Optum's Entire Arbitration And Delegation Clauses**

11           Optum argues that if any part of its clause is unconscionable or unenforceable, this

12  Court should help it out by rewriting the clause to let it have its way legally. But there is no way

13  for this Court to strike out the costs of arbitration created by Optum's clause – they arise from

14  the provisions requiring a panel of three senior arbitrators with health care experience, and

15  what that means in a case such as this. To address the excessive costs, a court would need to

16  replace the clause's approach with some other system of arbitration that was less expensive. To

17  do so, one would necessarily have to write a brand new arbitration provision from the ground

18  up. This is a flatly improper role for courts and would not represent something agreed to by the

19  parties.

20           In addition, the law is well established that where there are multiple unconscionable

21  provisions in an arbitration clause, the court should strike the entire arbitration clause. *E.g.,*

22  *Ronderos*, 114 F.4th at 1100  ("multiple unconscionable clauses serve as evidence of a

23  systematic effort to impose arbitration on an employee not simply as an alternative to

24  litigation, but as an inferior forum that works to the employer's advantage") (quotations

25  omitted); *Burnett*, 473 P.3d at 497 ("where unconscionable provisions pervade an arbitration

26  agreement, the entire agreement should be invalidated"). The Ninth Circuit concluded that "an

27  agreement can be considered permeated by unconscionability if it contains more than one

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    unlawful provision." *Id*. at 1102 (quotations omitted). The Ninth Circuit affirmed a district court

2    decision invalidating an arbitration clause that contained more than one unconscionable

3    provision, notwithstanding a severance provision in the clause.

4         Similarly, *Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670 (9th Cir. 2024), held that an

5    agreement "contain[ing] multiple interrelated substantive provisions that overly favor

6    defendants" represented a "systematic effort to impose arbitration. . . as an inferior forum,

7    designed to work to Live Nation's advantage," and thus it struck the entire arbitration clause,

8    notwithstanding a severability provision. *Id*. at 688–689 (citations and quotations omitted); *see*

9    *also Burnett*, 470 P.3d at 498 ("Permitting severability in the face of a contract that is

10   permeated with unconscionability only encourages those who draft contracts of adhesion to

11   overreach. If the worst that can happen is the offensive provisions are severed and the balance

12   enforced, the dominant party has nothing to lose by inserting one-sided, unconscionable

13   provisions.") (cleaned up).

14        Here, Optum's arbitration clause persistently and repeatedly seeks to give it an undue

15   advantage in arbitration compared with normal litigation in court:  small pharmacies must pay

16   ruinous fees to start an arbitration; the secrecy provision favors Optum, the repeat player; the

17   shorter statute of limitations favors Optum; the elimination of fee shifting provision is better

18   for Optum than the normal rule under the antitrust laws.  As the Restatement (Second) of

19   Contracts provides, "a court will not aid a party who has taken advantage of his dominant

20   bargaining power to extract from the other party a promise that is clearly so broad as to offend

21   public policy by redrafting the agreement so as to make a part of the promise enforceable."

22   §184 cmt. b (1981).

23        In *Graham Oil Co. v. ARCO Prods Co*., 43 F.3d 1244 (9th Cir. 1994), as amended (March

24   13, 1995) the Ninth Circuit struck an entire arbitration clause where "the offending parts of the

25   arbitration clause do not merely involve a single, isolated provision; the arbitration clause in

26   this case is a highly integrated unit containing three different illegal provisions…" Rather than

27   focusing on state law with respect to severability, the Ninth Circuit looked at the impact of an

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO
COMPEL INDIVIDUAL ARBITRATION - 21
Case No. 2:23-cv-01944-RSL

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1   arbitration clause with multiple unfair provisions on federal law:  "[I]ts various unlawful

2   provisions are all part of that overall procedure… Our decision to strike the entire clause rests in

3   part upon the fact that the offensive provisions clearly represent an attempt by ARCO to

4   achieve through arbitration what Congress has expressly forbidden."  Rather than focusing on

5   the law of California or any other state, the Ninth Circuit cited Allan Farnsworth, *Farnsworth on*

6   *Contracts* §5.8 at 70 (1990) (severance is inappropriate when the entire clause represents "an

7   integrated scheme to contravene public policy").

8           This Court should follow the law from many jurisdictions that recognizes that when

9   there are multiple unconscionable provisions, that severing them leads to the Court enforcing a

10  set of obligations that do not resemble the original contract. *E.g., Alexander v. Anthony Intern.,*

11  *L.P.,* 341 F.3d 256 (3rd Cir. 2003) (where there were multiple unconscionable provisions that

12  "unreasonably favor [defendant] to the severe disadvantage of plaintiffs… [t]he cumulative

13  effect of so much illegality prevents us from enforcing the arbitration agreement"); *Nino*, 609

14  F.3d at 201, 205 (where there were multiple unconscionable provisions in an agreement, this

15  foreclosed any possibility of severing the unfair provisions); *Hayes v. Delbert Services Corp.*, 811

16  F.3d 666 (4th Cir. 2016) (where it was "clear that one of the animating purposes of the

17  arbitration agreement was to ensure that" defendant could escape liability for breaking federal

18  law, "an unenforceable provision cannot be severed"); *Narayan*, 400 P.3d at556 (where

19  unconscionable provisions pervaded the agreement, the entire arbitration clause was stricken);

20  *Cordova v. World Finance Corp. of NM*, 146 N.M. 256 (2009) (where arbitration clause was one-

21  sided, court struck down the arbitration clause in its entirety "to avoid a type of judicial surgery

22  that inevitably would remove provisions that were central to the original mechanism for

23  resolving disputes between the parties"); *Damico v. Lennar Carolinas, LLC*, 879 S.E.2d 746, 758

24  (2022) (when illegality pervades the agreement, "judicial severing looks more like rewriting the

25  contract than fulfilling the intent of the parties") (citation and quotation omitted).

26          The approach urged by Optum, one picking and choosing through a clause with multiple

27  unconscionable provisions to rewrite a new enforceable one will encourage unfairness by

1    incentivizing companies to load their arbitration clauses with unfair terms and keep the few

2    that survive judicial scrutiny. As the Ninth Circuit has said, "To [sever the provision at issue]

3    would incentivize drafters to overreach based on the assumption they could simply waive

4    unconscionable terms when faced with litigation." *Lim*, 8 F.4th at 1005 (9th Cir. 2021).  *See also*

5    *Hayes v. Delbert Services,* 811 F.3d at 676 ("rather than use arbitration as a just and efficient

6    means of dispute resolution, Delbert seeks to deploy it to avoid state and federal law and to

7    game the entire system. Perhaps in the future companies will craft arbitration agreements on

8    the up and up and avoid the kind of mess that Delbert is facing here"); *Damico*, 879 S.E.2d at

9    760 ("We are specifically concerned that honoring the severability clause here creates an

10   incentive for Lennar and other home builders to overreach, knowing that if the contract is

11   found unconscionable, a narrower version will be substituted and enforced against an innocent,

12   experienced homebuyer"); *Kauffman v. U-Haul Int'l, Inc.*, 2018 WL 4094959 at *10 (E.D. Pa.

13   Aug. 28, 2018) (question is "whether the unconscionability of the arbitration clause

14   demonstrates a 'systematic effort to impose arbitration on an employee, not simply as an

15   alternative to litigation, but as an inferior forum that works to the employer's advantage"). *See*

16   *also* Restatement (Second) of Contracts § 184 cmt. b (1981) (court will not aid with severability

17   "a party who has taken advantage of his dominant bargaining power.") *Id.* at § 183 (severability

18   can only be invoked "by a party who did not engage in serious misconduct.")

19                                    **IV.    CONCLUSION**

20        Because there are multiple provisions of Optum's arbitration clause that are

21   substantively unconscionable, rather than inventing a completely new arbitration clause that

22   picks and chooses which parts of Optum's clause to enforce and which ones to rewrite, this

23   Court should strike down the entire provision. *Ronderos*, 114 F.4th at 1102.

24        In the alternative, if the Court grants Optum's motion, Plaintiffs are entitled to a stay in

25   lieu of dismissal and request one. *Smith v. Spizziri*, 601 U.S. 472, 476 (2024).

26

27

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    RESPECTFULLY SUBMITTED AND DATED this 9th day of June, 2025.

2                                        TERRELL MARSHALL LAW GROUP PLLC

3
                              *I certify that this memorandum contains 8,191*
4                             *words, in compliance with the Local Civil Rules.*

5
                              By: /s/ Blythe H. Chandler, WSBA #43387
6                                  Beth E. Terrell, WSBA #26759
                                   Email: bterrell@terrellmarshall.com
7                                  Amanda M. Steiner, WSBA #29147
                                   Email: asteiner@terrellmarshall.com
8                                  Blythe H. Chandler, WSBA #43387
                                   Email: bchandler@terrellmarshall.com
9                                  936 N. 34th Street, Suite 300
10                                 Seattle, Washington 98103
                                   Telephone: (206) 816-6603
11                                 Facsimile: (206) 319-5450

12
                                   Joshua Davis, *Admitted Pro Hac Vice*
13                                 Email: jdavis@bm.net
                                   Julie Pollock, *Admitted Pro Hac Vice*
14                                 Email: jpollock@bm.net
                                   BERGER MONTAGUE P.C.
15                                 505 Montgomery St, Suite 625
                                   San Francisco, CA 94111
16                                 Telephone: (415) 906-0684
17
                                   John Roberti, *Admitted Pro Hac Vice*
18                                 Email: jroberti@cohengresser.com
19                                 Melissa Maxman, *Admitted Pro Hac Vice*
                                   Email: mmaxman@cohengresser.com
20                                 Derek Jackson, *Admitted Pro Hac Vice*
                                   Email: djackson@cohengresser.com
21                                 Alisa Lu, *Admitted Pro Hac Vice*
                                   Email: alu@cohengresser.com
22                                 COHEN & GRESSER LLP
23                                 2001 Pennsylvania Ave, NW, Suite 300
                                   Washington, DC 20006
24                                 Telephone: (202) 851-2070
25
                                   *Attorneys for Plaintiff*
26

27

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO
COMPEL INDIVIDUAL ARBITRATION - 24
Case No. 2:23-cv-01944-RSL

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com