Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| OSTERHAUS PHARMACY, INC., CAMMACK'S PHARMACIES, INC. DBA JIM'S PHARMACY AND HOME HEALTH, HARBOR DRUG CO., INC., VALU DRUGS INC., and MEDFORD PHARMACY GROUP LLC DBA WEST MAIN PHARMACY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNITEDHEALTH GROUP INCORPORATED; OPTUM, INC.; OPTUMRX, INC.; OPTUMRX HOLDINGS, LLC,<br><br>Defendants. | CASE No. 2:23-cv-01944<br><br>**REPLY IN SUPPORT OF MOTION TO COMPEL INDIVIDUAL ARBITRATION**<br><br>**NOTE ON MOTION CALENDAR: JUNE 30, 2025** |

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ..................................................................................................................... 2

    A.    Minnesota Law Should Apply, but Arbitration Is Required Under either Minnesota or Washington Law ................................................................................. 2

    B.    Plaintiffs' Unconscionability Complaints Are for the Arbitrator to Decide ................ 3

    C.    Plaintiffs' Unconscionability Complaints Fail ............................................................ 5

        1.    The arbitration agreements are not procedurally unconscionable ..................... 5

        2.    The arbitration agreements are not substantively unconscionable .................... 8

    D.    The Court Should Sever Any Unconscionable Provision ......................................... 12

III. CONCLUSION ................................................................................................................ 12

# TABLE OF AUTHORITIES

**Cases**

*Adler v. Fred Lind Manor*,
 153 Wash. 2d 331 (2004) ...................................................................................................12

*Bielski v. Coinbase*,
 87 F.4th 1003 (9th Cir. 2023) ................................................................................................3

*Brown v. MHN Gov't Servs.*,
 178 Wash. 2d 258 (2013) ................................................................................................3, 12

*Burnett v. Pagliacci Pizza*,
 196 Wash. 2d 38 (2020) .....................................................................................................12

*Caremark v. Chickasaw Nation*,
 43 F.4th 1021 (9th Cir. 2022) ............................................................................................3, 4

*Caremark v. Choctaw Nation*,
 104 F.4th 81 (9th Cir. 2024) ..................................................................................................3

*Cargill v. Biodiesel of Las Vegas*,
 2010 WL 4121850 (D. Nev. Sept. 8, 2010) ...........................................................................7

*Copper Bend Pharmacy v. OptumRx*,
 2023 WL 2964485 (Ill. App. Ct. Apr. 14, 2023) ................................................................8, 9

*Coppock v. Citigroup*,
 2013 WL 1192632 (W.D. Wash. Mar. 22, 2013) ...................................................................3

*Fischer v. Kelly Servs. Global*,
 2024 WL 382181 (S.D. Cal. Jan. 31, 2024) ...........................................................................4

*Frazier v. W. Union Co.*,
 377 F. Supp. 3d 1248 (D. Colo. 2019) ...................................................................................4

*Gandee v. LDL Freedom Enters.*,
 176 Wash. 2d 598 (2013) ....................................................................................................12

*Juarez v. T-Mobile USA*,
 2024 WL 5424366 (C.D. Cal. Aug. 23, 2024) .......................................................................4

*Knapke v. PeopleConnect*,
 38 F.4th 824 (9th Cir. 2022) .................................................................................................10

*Mabe v. OptumRx*,
 2024 WL 3498353 (M.D. Pa. July 22, 2024) ................................................................6, 7, 9

*McKee v. AT&T Corp.*,
 164 Wash. 2d 372 (2008) .......................................................................................................3

*Mendez v. Palm Harbor Homes*,
 111 Wash. App. 446 (2002) ...................................................................................................9

*OptumRx v. South Miami Pharmacy*,
 2023 WL 3790628 (Fla. Cir. Ct. June 1, 2023) ...................................................................7

*Osterhaus Pharmacy v. CVS*,
 2024 WL 3043414 (W.D. Wash. June 18, 2024) ................................................................3

*Osterhaus Pharmacy v. CVS*,
 2025 WL 472731 (D. Ariz. Feb. 12, 2025) ........................................................1, 6, 10, 11, 12

*Phillips v. Swedish Health Servs.*,
 567 P.3d 625 (Wash. Ct. App. 2025) ................................................................................10

*Poublon v. C.H. Robinson Co.*,
 846 F.3d 1251 (9th Cir. 2017) ..........................................................................................12

*Rent-A-Ctr., West v. Jackson*,
 561 U.S. 63 (2010) ..............................................................................................................4

*Romney v. Franciscan Med. Grp.*,
 186 Wash. App. 728 (2015) ..............................................................................................10

*Sanchez v. Carmax Auto Superstores Cal.*,
 224 Cal. App. 4th 398 (2014) ...........................................................................................10

*Shanghai Com. Bank v. Kung Da Chang*,
 189 Wash. 2d 474 (2017) ....................................................................................................2

*Showalter v. Apartment Mgmt. Consultants*,
 754 F. Supp. 3d 1074 (W.D. Wash. 2024) ..........................................................................4

*Tompkins v. 23andMe*,
 840 F.3d 1016 (9th Cir. 2016) ..........................................................................................11

*Uptown Drug Co. v. CVS Caremark*,
 962 F. Supp. 2d 1172 (N.D. Cal. 2013) ..............................................................................6

*Vasquez-Lopez v. Beneficial Oregon*,
 210 Or. App. 553 (2007) ...................................................................................................10

*Woodall v. Avalon Care Ctr.-Federal Way*,
 155 Wash. App. 919 (2010) ................................................................................................9

*Zuver v. Airtouch Commc'ns*,
 153 Wash. 2d 293 (2004) ...................................................................................5, 8, 10, 12

## I. INTRODUCTION

Plaintiffs attempt to mislead the Court by portraying themselves as unsophisticated independent pharmacies. The truth is that Plaintiffs are substantial businesses and sophisticated litigants—having filed similar class actions against two other Pharmacy Benefits Managers ("PBMs"). Plaintiffs do not contest that they entered into individual arbitration agreements with OptumRx, that those arbitration agreements cover their claims in this case, and that the agreements contain provisions delegating to the arbitrator all disputes over arbitrability. Plaintiffs ignore the numerous cases enforcing OptumRx's arbitration agreements. *See* Mot. 1, 17. Indeed, Plaintiffs omit the recent decision by a federal court in *their own litigation* against CVS, compelling arbitration over the plaintiffs' similar objections. *See Osterhaus Pharmacy v. CVS*, 2025 WL 472731 (D. Ariz. Feb. 12, 2025) ("*CVS*"). The same result is appropriate here.

At the outset, OptumRx moved to compel arbitration under two enforceable agreements (the Provider Manual and the Provider Agreements), but Plaintiffs ignore the Provider Agreements altogether—thus waiving any arguments against their enforcement. Plaintiffs' omissions continue with their failure to address Pharmacy Services Administrative Organizations ("PSAOs"). These powerful and sophisticated contracting entities negotiated the Provider Agreements on Plaintiffs' behalf. Plaintiffs never grapple with (or even mention) how the PSAOs affected the purported "enormous power disparity" (Opp. 4) between themselves and OptumRx. Plaintiffs also omit that the owner of three of the five Plaintiffs co-owns over 30 pharmacies, is president of the National Community Pharmacists Association ("NCPA"), and serves on the board of the nation's largest PSAO. Plaintiffs' contention that they have "less experience" (*id.*) is misleading and Plaintiffs have failed to provide a complete recitation of their sophistication and how they used PSAOs to negotiate their contracts.

Having ignored the Provider Agreements, Plaintiffs' only justification for disregarding their arbitration obligations under the Provider Manual is a grab-bag of unconscionability arguments. All are unavailing. *First*, Plaintiffs' unconscionability arguments have been delegated to the arbitrator to resolve. *Second*, Plaintiffs' unconscionability arguments fail on the merits. They contend that the

arbitration agreements are procedurally unconscionable, but Plaintiffs misrepresent how those agreements were negotiated and their own level of sophistication.

Plaintiffs next contend that various provisions of the arbitration agreements are substantively unconscionable, but Plaintiffs distort these provisions to dramatically inflate the alleged burden of arbitration. The actual provisions are standard terms that are enforceable under either Minnesota or Washington law. Plaintiffs claim that the arbitration costs are supposedly "excessive," but their estimates are overblown, based on faulty assumptions, and do not apply to the delegation clauses. Plaintiffs also fail to address important facts regarding their finances. *Third*, to the extent the Court concludes that any particular provision is unconscionable, legal precedent compels the Court to sever that provision and enforce the remainder of the arbitration agreements.

The Court should reject Plaintiffs' attempt to open the door to a federal class action involving thousands of pharmacies. Instead, the Court should grant OptumRx's motion to compel individual arbitration and stay the litigation.

## II. ARGUMENT

### A. Minnesota Law Should Apply, but Arbitration Is Required Under either Minnesota or Washington Law

Although Plaintiffs' arguments should fail under any state's law, Minnesota law applies to Plaintiffs' unconscionability challenges under the most significant relationship test applied by Washington courts when there is a conflict between Washington and another state's law. *See* Mot. 14–15. Here, there is a conflict because Minnesota requires both substantive and procedural unconscionability to render an agreement unconscionable, while Washington requires only substantive or procedural unconscionability.

Although three Plaintiffs operate in Washington, the original Plaintiff is based in Iowa, the fifth operates in Oregon, and Plaintiffs seek to represent a nationwide class of thousands of pharmacies, challenging OptumRx's nationwide practices. Minnesota is the only common denominator that would promote "certainty, predictability and uniformity of result." *Shanghai Com. Bank v. Kung Da Chang*, 189 Wash. 2d 474, 485 n.10 (2017). Moreover, under the forum selection clause, four of the five Plaintiffs must arbitrate in Minnesota. *See* Dkt. 63-3, p. 127. For nearly all Plaintiffs, the place of

performance and location and subject matter of the contract—the arbitration agreement—is Minnesota. *See Osterhaus Pharmacy v. CVS*, 2024 WL 3043414, at *2 (W.D. Wash. June 18, 2024) (transferring case to Arizona, the state of the defendant PBM, as "agreed-upon forum and state with the greatest interest").

Plaintiffs' cases (Opp. 12–13) are inapposite. Nearly all concerned claims by consumers, focusing on "Washington's interest in protecting . . . its consumers." *McKee v. AT&T Corp.*, 164 Wash. 2d 372, 386 (2008). These cases do not apply here, where Plaintiffs are businesses represented by sophisticated negotiating entities. In other contexts, Washington courts have applied the law of another state when evaluating the validity of arbitration agreements. *See, e.g.*, *Coppock v. Citigroup*, 2013 WL 1192632, at *2 (W.D. Wash. Mar. 22, 2013) (South Dakota law); *Brown v. MHN Gov't Servs.*, 178 Wash. 2d 258, 263 (2013) (California law). The Court should apply Minnesota law.

However, even if this Court applies Washington law, arbitration is required because Plaintiffs' unconscionability arguments are for the arbitrator to decide, and they fail on the merits.

**B.     Plaintiffs' Unconscionability Complaints Are for the Arbitrator to Decide**

Plaintiffs do not contest that the parties' arbitration agreements include delegation clauses, and incorporate the AAA arbitration rules, which likewise delegate all arbitrability disputes to the arbitrator. Mot. 12–14; *see also, e.g.*, Dkt. 63-3, p. 127 (requiring arbitration of "any and all questions regarding arbitrability"). So Plaintiffs' unconscionability arguments are for the arbitrator. *See* Mot. 13–14 (collecting cases).

Courts across the country have upheld virtually identical delegation clauses in OptumRx's arbitration agreements. *See* Mot. 17 (collecting cases). And the Ninth Circuit has twice enforced similar delegation clauses in pharmacy provider manuals. *See Caremark v. Chickasaw Nation*, 43 F.4th 1021, 1033 (9th Cir. 2022); *Caremark v. Choctaw Nation*, 104 F.4th 81, 86 (9th Cir. 2024).

Plaintiffs contend that the delegation clauses are themselves unconscionable, for the same reasons as the arbitration agreements as a whole. But "[a] party resisting arbitration must . . . make specific arguments attacking the [delegation] provision." *Bielski v. Coinbase*, 87 F.4th 1003, 1009 (9th Cir. 2023). Here, instead of attacking the delegation clauses directly, Plaintiffs focus on other

arbitration provisions—including the confidentiality, attorneys' fee, and limitations clauses—and the cost of arbitration. Plaintiffs do not even attempt to apply most of their arguments to the delegation clauses, beyond appending "and Delegation Clause" to their headers.

Plaintiffs' challenge to the delegation clauses fails because their arguments are not "aimed squarely" at those clauses. *Fischer v. Kelly Servs. Global*, 2024 WL 382181, at *15 (S.D. Cal. Jan. 31, 2024). Where, as here, a party challenging an arbitration agreement fails to "make any arguments specific to the delegation provision" and "argu[es] . . . that the [arbitration agreement] *as a whole* is unconscionable," an arbitrator must determine the agreement's validity. *Rent-A-Ctr., West v. Jackson*, 561 U.S. 63, 74–75 (2010). *See also Juarez v. T-Mobile USA*, 2024 WL 5424366, at *7 (C.D. Cal. Aug. 23, 2024) (applying *Bielski* and finding that plaintiffs "failed to properly challenge the delegation provisions" when they "simply incorporate[d] the unconscionability arguments" against other arbitration provisions); *Showalter v. Apartment Mgmt. Consultants*, 754 F. Supp. 3d 1074, 1080 (W.D. Wash. 2024) (same).

In any case, the delegation clauses are not unconscionable. In *Chickasaw Nation*, the Ninth Circuit rejected a nearly identical attempt by pharmacies to avoid a delegation clause in a Provider Manual. When the plaintiffs challenged various features of the Provider Manual's arbitration agreement—including, as here, "a shorter statute-of-limitations period," "less generous fee- and cost-shifting provisions," and "confidentiality provisions"—the Ninth Circuit explained that these provisions "do not implicate at all the [plaintiff's] ability to arbitrate the delegated gateway issues," and were "immaterial at [that] stage." 43 F.4th at 1034 n.13. The same is true here.

For example, Plaintiffs never explain how the confidentiality provision would hamper their ability to arbitrate their unconscionability challenge. *See id.* (rejecting challenge to delegation clause for same reason). Nor do Plaintiffs estimate the cost of arbitrating their unconscionability challenge; they provide a faulty cost estimate of a *full* arbitration, based on the assumption that three arbitrators would each spend 200–400 hours on the merits. Opp 5–6; *see infra* 8–9. But at this stage, all that matters is whether the cost to arbitrate unconscionability would be prohibitive. *See Frazier v. W. Union Co.*, 377 F. Supp. 3d 1248, 1269 (D. Colo. 2019) (plaintiffs' cost arguments "[we]re for the arbitrator

to decide" because "[a]rguments relating to the cost of arbitrating the entire dispute do not specifically address the cost of permitting the arbitrator to determine only arbitrability through the delegation clause."). Arbitrating unconscionability will be cost-effective because the parties have already briefed the issue—and Plaintiffs have provided no evidence to the contrary.

Lastly, Plaintiffs claim that it's unconscionable to require Plaintiffs to "ask[] three AAA arbitrators if their own income was excessive." Opp. 15. But the unconscionability inquiry has nothing to do with whether an *arbitrator's income* is excessive. Rather, the test is whether the cost of arbitration is prohibitively expensive *for Plaintiffs*, considering Plaintiffs' own finances. *See Zuver v. Airtouch Commc'ns*, 153 Wash. 2d 293, 308 (2004) (plaintiff "must provide evidence showing that arbitration would impose prohibitive costs").

The Court should enforce the delegation clauses because Plaintiffs did not specifically challenge them, and Plaintiffs have not demonstrated that it would be unconscionable to require them to raise their arbitration challenges to an arbitrator.

### C. Plaintiffs' Unconscionability Complaints Fail

Even if the Court resolves Plaintiffs' unconscionability challenges (it should not), Plaintiffs' challenges fail. Notably, OptumRx moved to compel arbitration under two agreements (the Provider Manual and the Provider Agreements). Mot. 4–6, 11, 15 n.9 (Provider Agreements); *id.* 6–7, 11–12, 15 n.9 (Provider Manual). **Plaintiffs ignore the Provider Agreements, waiving any challenge to arbitration under those agreements.** That is reason alone to grant OptumRx's motion. Plaintiffs also fail to carry their burden to show that the Provider Manual is unconscionable.

#### 1. The arbitration agreements are not procedurally unconscionable.

Plaintiffs insist their arbitration agreements are unconscionable because Plaintiffs had less bargaining power, were unaware of the agreements' terms, and lacked meaningful choice. Opp. 3–5, 13–14. Plaintiffs rely on an expert declaration asserting that OptumRx has "substantial market power," and contending that OptumRx presented the arbitration agreements on a take-it-or-leave-it basis. Dkt. 69-1, ¶¶ 3, 17.

Plaintiffs and their expert omit a critical, undisputed fact: Plaintiffs did not negotiate contracts with OptumRx by themselves. Plaintiffs are members of PSAOs—sophisticated organizations that represent thousands of pharmacies and use their collective-bargaining power to negotiate contracts with OptumRx. Dkt. 63, ¶¶ 6–11, 20–54. PSAOs and OptumRx engage in negotiations over the terms of the Provider Agreements, which have sometimes involved changes to the arbitration agreements. *Id.* ¶ 24. The Provider Agreements, which Plaintiffs ignore, are the contracts by which Plaintiffs joined OptumRx's networks, and which contain their own arbitration clauses. *See* Mot. 4–5. The Provider Agreements incorporate and require compliance with the Provider Manual, and nothing stops a PSAO from negotiating the extent to which the Provider Manual is incorporated. Dkt. 63, ¶ 24. Moreover, pharmacies can (and do) choose among competing PSAOs that have negotiated different contracts with OptumRx, or they may negotiate contracts with OptumRx directly. *Id.* ¶¶ 20, 23.

In *Mabe v. OptumRx*, the federal court rejected over 400 pharmacies' procedural unconscionability arguments against OptumRx in part because "Plaintiffs can and do choose whether and when to be part of a PSAO, as well as which PSAO to join." 2024 WL 3498353, at *13 (M.D. Pa. July 22, 2024). The PSAO then acts on behalf of pharmacies to negotiate contracts with OptumRx, eliminating any claim of procedural unconscionability. *Id.* at *11. Plaintiffs ignore *Mabe* and their PSAOs' negotiating power, focusing instead on OptumRx's market share. But a "Defendants' market power is irrelevant to the Court's unconscionability inquiry unless Plaintiffs are able to establish that Defendants abused that market power in some way." *CVS*, 2025 WL 472731, at *3. Plaintiffs and their expert, who ignore the role of PSAOs and "assume that Plaintiffs' factual allegations . . . are correct," Dkt. 69-1, ¶ 3, do not come close to making that showing. *See also Uptown Drug Co. v. CVS Caremark*, 962 F. Supp. 2d 1172, 1181 (N.D. Cal. 2013) (rejecting procedural unconscionability argument based on Caremark's size, and finding that nothing "compel[s] the conclusion that [pharmacies] *had* to do business with Caremark.").

Plaintiffs' assertion that they were "unaware of and surprised by" the arbitration agreements, Opp. 4, is meritless. Each Plaintiff had its PSAO negotiate a contract on its behalf, and those contracts contain arbitration agreements and incorporate the Provider Manual's arbitration agreement. It is

implausible that Plaintiffs could hire agents to negotiate contracts on their behalf, operate under those contracts for many years, and then claim they were "surprised" by terms in those contracts. *See Cargill v. Biodiesel of Las Vegas*, 2010 WL 4121850, at *4 (D. Nev. Sept. 8, 2010) (party had "no reason to be surprised by" arbitration clause when parties began relationship "three years before the instant dispute" and "engaged in a number of transactions together"). Further, OptumRx publishes the Provider Manual publicly on its website and notifies all participating pharmacies when it is updated, and Plaintiffs received multiple notices of updated manuals, including notices referencing the dispute resolution provisions. Dkt. 63, ¶¶ 11–19; *Mabe*, 2024 WL 3498353, at *8 (finding pharmacies had abundant notice of Provider Manual).

Moreover, Plaintiffs' assertion that they are small business owners with no experience with complex arbitration clauses (Opp. 4) is inaccurate. Three of the five Plaintiff pharmacies are owned by Jeffrey Harrell, a CEO of a group operating 35 pharmacies who sits on the board of "the nation's largest" PSAO (AlignRx), which serves over 5,600 pharmacies.[1] He is also president of NCPA, a trade association that "represent[s] over 18,900 pharmacies that employ more than 205,000 individuals nationwide."[2] Harrell presents himself as an expert commentator on PBM and pharmacy contracting practices.[3] And Matt Osterhaus, the owner of Osterhaus Pharmacy before its sale, likewise is active on PBM issues and is the former president of the American Pharmacists Association.[4] Plaintiffs' assertions about lack of business acumen are not plausible.

Plaintiffs' cases (Opp. 13) are distinguishable because they involve individual employees—not sophisticated businesses that hired large PSAOs to negotiate their contracts. Other courts have rejected procedural unconscionability arguments against OptumRx's arbitration agreements for this very reason. *See, e.g.*, *Mabe*, 2024 WL 3498353, at *12–13; *OptumRx v. South Miami Pharmacy*, 2023 WL

---

[1] *See* Dkt. 69-4; Dkt. 69-5; Dkt. 69-6; Clare Steinberg Decl., Exs. A–D, M.

[2] Steinberg Decl. Ex. E.

[3] *See, e.g.*, *id.* Exs. B, F, G.

[4] *Id.* Exs. H, N.

3790628, at *6 (Fla. Cir. Ct. June 1, 2023); *Copper Bend Pharmacy v. OptumRx*, 2023 WL 2964485, at *13–16 (Ill. App. Ct. Apr. 14, 2023). This Court should do the same.

### 2. The arbitration agreements are not substantively unconscionable.

To the extent the Court considers the merits of Plaintiffs' substantive unconscionability arguments, they fail.

#### a. Costs of arbitration.

Plaintiffs claim the costs of arbitration would be "prohibitive." Opp. 14. Under Washington law, they "must provide evidence," not merely speculation, "showing that arbitration would impose prohibitive costs." *Zuver*, 153 Wash. 2d at 308; *see also* Mot. 18–19. Plaintiffs contend they will be required "to pay arbitration fees of $310,000 to $600,000," Opp. 14, but these figures are wildly inflated.

Plaintiffs offer two bare-bones attorney declarations presenting widely varying ranges of fees and hours. But Plaintiffs' estimates are flawed because they rely on false assumptions. First, Plaintiffs assume that their cases would be heard by a panel of three arbitrators. Opp. 5–6. But under the current Provider Manual, which applies to four of five Plaintiffs (Mot. 15 n.9), only one arbitrator is assigned to disputes under $1 million. Dkt. 63-3, p. 127. Plaintiffs have introduced no evidence that their individual claims exceed $1 million, and in fact, evidence shows that the amounts at issue are all substantially less than $1 million. Heather Bates Decl. ¶ 7. Thus, Plaintiffs overstate the arbitration fees by a factor of three.

Second, Plaintiffs' calculation falsely assumes that they would be responsible for paying the *entire* arbitration fee amount. Opp. 14. But, in fact, Plaintiffs would *split* the arbitrator's fees with OptumRx. Dkt. 63-3, p. 128. This misleading error means that even Plaintiffs' inflated estimates would be cut in half.

Plaintiffs' discussion of their ability to pay fares no better. Plaintiffs' declarations omit key information like net worth and Osterhaus' sale price (*see* Mot. 3), and each asserts they have "a few hundred thousand dollars in cash on hand," *e.g.*, Dkt. 69-2, ¶ 16, despite varying revenue. Even so, the declarations make clear that Plaintiffs operated businesses with millions of dollars in revenue—revenue

they obtained, in part, from OptumRx. Indeed, Plaintiffs accepted more than *$30 million* under the OptumRx contracts they now want to avoid, and they rely on those same contracts to bring claims seeking even more money in this lawsuit. *See* Dkt. 64, ¶ 8; Mot. 8, 10. Plaintiffs cannot enter contracts that benefit them to the tune of millions of dollars, sue for even more compensation, and then claim that the same contracts are unconscionable because arbitration is allegedly too expensive. Mot. 10–11 (collecting cases). This case is a far cry from the "hardscrabble situation" of the "part-time waitress" in Plaintiffs' cited Washington case. *Mendez v. Palm Harbor Homes*, 111 Wash. App. 446, 463 (2002).

Plaintiffs' cases, Opp. 14–15, are distinguishable, as they concern high case initiation fees—which are not at issue here—and situations involving workers, students, or consumers rather than businesses. *See Copper Bend*, 2023 WL 2964485, at *18 (rejecting pharmacies' arguments against OptumRx on costs in part because they were "sophisticated," "professional businesses," and distinguishing cases involving "a consumer or an employee").

Moreover, public information shows that Plaintiffs' "cash on hand" likely presents an inaccurate financial picture. NCPA—the organization Harrell is the president of—has stated that it has established a made-for-litigation entity, Trust LLC, to litigate or arbitrate claims against PBMs on behalf of pharmacies on a contingency basis.[5] The Trust's attorneys (Berger Montague and Cohen & Gressler) represent Plaintiffs here, as well as some of the same Plaintiffs in near-identical suits against CVS and Express Scripts, and NCPA has publicly confirmed that Trust is involved in efforts against other PBMs.[6] NCPA itself reported approximately $132 million in assets and $14 million in revenue for 2022.[7] *See Woodall v. Avalon Care Ctr.-Federal Way*, 155 Wash. App. 919, 936 (2010) (plaintiff failed to show arbitration prohibitively expensive when he did not include "highly relevant" evidence of his ability to pay); *Mabe*, 2024 WL 3498353, at *14–15 (finding plaintiffs' affidavits regarding their

---

[5] Steinberg Decl. Ex. I.

[6] *Id.* (listing counsel); *id.* Exs. J, K.

[7] *Id.* Ex. L.

ability to pay insufficient because they did not provide "concrete details . . . to fact check the data provided").[8]

### b. Confidentiality clause.

The arbitration agreements include a narrow confidentiality clause applying to "[t]he arbitration and the award of the arbitrator(s)." Dkt. 63-3, p. 128. Courts routinely uphold this type of provision in Washington and elsewhere. *Sanchez v. Carmax Auto Superstores Cal.*, 224 Cal. App. 4th 398, 408 (2014); *Vasquez-Lopez v. Beneficial Oregon*, 210 Or. App. 553, 575–76 (2007); *Phillips v. Swedish Health Servs.*, 567 P.3d 625, 631–32 (Wash. Ct. App. 2025); *Romney v. Franciscan Med. Grp.*, 186 Wash. App. 728, 743–45 (2015). Contrary to Plaintiffs' assertions (Opp. 15), the provision applies equally to all parties. While Plaintiffs complain the provision favors OptumRx as a "repeat" player, Opp. 16, Plaintiffs themselves are serial litigants against PBMs.

Plaintiffs' only cited case applying Washington law, involving an employee's "discrimination claim," has no application here. *Zuver*, 153 Wash. 2d at 315 (striking but severing confidentiality clause). The court's concern regarding an employee's ability to prove "a pattern of discrimination," *id.*, does not bear on Plaintiffs' desire to deploy confidential information from this case in their suits against other PBMs. Plaintiffs' Ninth Circuit cases (Opp. 15–16) likewise concerned the employment or consumer context, facially non-mutual provisions, and/or discovery limitations. In *CVS*, the court found that the "source of the [confidentiality] clause's unconscionability" was a companion provision of the arbitration agreement prohibiting discovery into other arbitrations, which the court struck, 2025 WL 472731, at *13—but no comparable provision exists here.

### c. Attorneys' fees.

The arbitration agreements provide that each party is responsible for its own fees and expenses, "except as required by law." Dkt. 63-3, p. 128. Plaintiffs complain this is unfair because antitrust laws allow Plaintiffs to recover attorneys' fees if they prevail. But six of Plaintiffs' seven claims are not

---

[8] Plaintiffs' argument fails based on undisputed facts and contract terms. In the alternative, OptumRx requests the opportunity to conduct discovery testing Plaintiffs' ability to pay for arbitration. *See Knapke v. PeopleConnect*, 38 F.4th 824, 829 (9th Cir. 2022) (movant "has a right to conduct discovery . . . before the district court decides the motion to compel arbitration").

under antitrust laws and not subject to any fee-shifting requirements. And Plaintiffs have no response to *CVS*, which upheld an arbitration provision "impos[ing] a financial burden upon Plaintiffs that they would not bear in court." 2025 WL 472731, at *4.

### d. Contractual limitations period.

Plaintiffs argue the arbitration agreements are unconscionable because they "reduce[] the statute of limitations from four to one year." Opp. 17.

Plaintiffs misstate the limitations provision, which requires arbitration to be brought within one year of *notice being provided*, which may itself occur "within one year of the facts giving rise to the Dispute." Dkt. 63-3, p. 127. The contractual limitations period is thus two years, double what Plaintiffs assert, and affords ample time for Plaintiffs to bring their claims. In *CVS*, the court upheld a much shorter six-month contractual limitations period. 2025 WL 472371, at *12. The only Washington case cited by Plaintiffs dealt with a shorter, one-year statute of limitations. Opp. 18. Applying California law, the Ninth Circuit has found a one-year limitations provision enforceable, noting that "California courts have afforded contracting parties considerable freedom to modify the length of a statute of limitations." *Tompkins v. 23andMe*, 840 F.3d 1016, 1032 (9th Cir. 2016) (cleaned up).

### e. Forum selection clause.

The "modern trend . . . favors enforceability of forum selection clauses," placing a "heavy burden" on Plaintiffs to demonstrate it would be "so gravely difficult and convenient that [they] will for all practical purposes be deprived of their day in court." *Id.* at 1027–29 (cleaned up). Plaintiffs argue the Provider Manual's forum selection clause is unconscionable because the location is "inconvenient." Opp. 19. But under the current Provider Manual, pharmacies may elect a "virtual" arbitration for disputes under $1 million. Dkt. 63-3, p. 127. Plaintiffs also do not explain how it would be unconscionably burdensome for the Iowa-based original Plaintiff (Osterhaus) to arbitrate in neighboring Minnesota, as opposed to litigating in Washington, where Osterhaus chose to file suit. Plaintiffs' inapposite cases concern modest individual plaintiffs in the consumer or employment context. *See, e.g.*, *Gandee v. LDL Freedom Enters.*, 176 Wash. 2d 598, 601, 604 (2013) ("unemployed" plaintiff contesting "debt adjustment contract"). *See also Poublon v. C.H. Robinson Co.*, 846 F.3d

1251, 1265 (9th Cir. 2017) (finding venue provision requiring arbitration of California employment claims in Minnesota not unreasonable); *Brown*, 178 Wash. 2d at 269 (upholding California forum selection clause).

### D. The Court Should Sever Any Unconscionable Provision

Plaintiffs failed to prove that any provisions in their contracts are unconscionable. But if the Court disagrees, it should sever those provisions consistent with the contracts' severability clause (Dkt. 63-3, p. 128). In Washington, "[s]everance is the usual remedy for substantively unconscionable terms." *Gandee*, 176 Wash. 2d at 603.

In *CVS*, the court found multiple provisions unconscionable, severed them, and enforced the arbitration agreement. 2025 WL 472731, at *12. Many of Plaintiffs' cases reach the same result. For example, in *Adler v. Fred Lind Manor*, the court severed two provisions—attorneys' fees and 180-day limitations clauses—and enforced the arbitration agreement so as not to "disturb[] the primary intent of the parties to arbitrate their disputes." 153 Wash. 2d 331, 359–60 (2004). Likewise, in *Zuver*, the court severed the confidentiality and remedies provisions, emphasizing that "[c]ourts are generally loath to upset the terms of an agreement and strive to give effect to the intent of the parties." 153 Wash. 2d at 320. Plaintiffs rely on distinguishable cases without severance clauses, *see, e.g.*, *Burnett v. Pagliacci Pizza*, 196 Wash. 2d 38, 60–61 (2020), and instances "where unconscionable provisions pervade[d] [the] agreement," *see id.* at 60.

Should this Court determine that any provisions of the agreements are unconscionable, the Court should enforce the remainder of the parties' contracts.

### III. CONCLUSION

Plaintiffs seek to set aside arbitration agreements which forbid the class-wide adjudication of claims and represent a class of thousands of pharmacies in federal court. To do so, they twist the facts and ignore relevant legal decisions. The Court should reject Plaintiffs' attempt, compel arbitration, and stay the litigation.

| | | |
|---|---|---|
| 1 | Dated: June 30, 2025 | Respectfully submitted, |
| 2 | | |
| 3 | | /s Geoffrey Sigler |
| 4 | | **Gibson, Dunn & Crutcher LLP** |
| 5 | | Geoffrey Sigler, *Pro Hac Vice* |
| 6 | | Clare F. Steinberg, *Pro Hac Vice*<br>1700 M Street, N.W. |
| 7 | | Washington, D.C. 20036-4504<br>Telephone: 202.955.8500 |
| 8 | | Facsimile: 202.467.0539<br>Email: GSigler@gibsondunn.com |
| 9 | | Email: CSteinberg@gibsondunn.com |
| 10 | | Brian W. Anderson, *Pro Hac Vice*<br>3161 Michelson Drive |
| 11 | | Suite 1200<br>Irvine, CA 92612-4412 |
| 12 | | Telephone: 949.451.3800<br>Facsimile: 949.451.4220 |
| 13 | | Email: BAnderson@gibsondunn.com |
| 14 | | |
| 15 | | /s Darin M. Sands |
| 16 | | Darin M. Sands, WSBA No. 35865<br>Heidi B. Bradley, WSBA No. 35759 |
| 17 | | **Bradley Bernstein Sands LLP** |
| 18 | | 2800 First Avenue, Suite 326<br>Seattle, WA 98121 |
| 19 | | Telephone: 206.337.6551<br>Email: dsands@bradleybernstein.com |
| 20 | | Email: hbradley@bradleybernstein.com |
| 21 | | In accordance with LCR 7(e)(6), the signatory |
| 22 | | certifies that this motion contains 4,191 words,<br>in compliance with the Local Civil Rules. |
| 23 | | *Attorneys for Defendants* |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

REPLY IN SUPPORT OF MOT. TO COMPEL ARB. – 13
No. 2:23-cv-01944-RSL

GIBSON, DUNN & CRUTCHER LLP
1700 M STREET, N.W.
WASHINGTON, DC 20036