UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

OSTERHAUS PHARMACY, INC., *et al.*,

        Plaintiffs,

    v.

UNITEDHEALTH GROUP INCORPORATED, *et al.*,

        Defendants.

CASE NO. 2:23-cv-01944-RSL

ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION

This matter originally came before the Court on defendants' "Motion to Compel Individual Arbitration." Dkt. 66. Plaintiffs argued that the arbitration and delegation provisions were unconscionable, but neither party acknowledged or addressed the contractual choice-of-law provisions in the Pharmacy Network Agreements. The Court declined to determine the import and impact of the choice-of-law provision without assistance from the parties and requested supplemental briefing. Dkt. 75. Having reviewed the memoranda, declarations, and exhibits submitted by the parties, including the supplemental briefing, the Court finds as follows:

**BACKGROUND**

Plaintiffs are five independent pharmacies, three of which operate in Washington, one of which operated in Iowa, and one of which operates in Oregon. Dkt. 54 at ¶¶ 5-9. Plaintiffs joined Pharmacy Service Administrative Organizations ("PSAOs") to obtain

administrative services from defendant OptumRx related to reimbursements for prescription drug services through Medicare Part D. The PSAOs contract with OptumRx on behalf of member pharmacies, and each plaintiff joined a PSAO that had a pre-existing contractual relationship with OptumRx. Plaintiffs allege that defendants used their substantial power in the market for filling Medicare Part D prescriptions to coerce PSAO members to purchase ancillary services from OptumRx, compelling the pharmacies to pay fees or penalties for the unwanted services. Plaintiffs assert that this conduct violates the antitrust laws, the Medicare statute, and contract and equitable principles and assert claims on behalf of a class of all pharmacy service providers who have paid OptumRx for ancillary services from September 26, 2019, to the time of trial. Defendants argue that plaintiffs are contractually obligated to resolve their claims individually in binding arbitration.

The contracts the PSAOs negotiated with OptumRx contain mandatory arbitration provisions that clearly delegate to the arbitrator any questions regarding arbitrability or the existence/validity of the arbitration agreement. When defendants first moved to compel arbitration, they relied on contracts dated between October 1, 2012, and May 26, 2015. Those contracts specified that California law governed and that binding arbitration would occur in California. Dkt. 63-5 at 19-20 and 22 (Osterhaus Pharmacy); Dkt. 63-7 at 20 and 23 (Harbor Drug and Valu Drugs); Dkt. 63-8 at 19-20 and 23 (West Main Pharmacy); Dkt. 63-9 at 19 and 23 (Jim's Pharmacy). Effective January 1, 2025 (more than a year after this litigation was filed) the Pharmacy Network Agreement for Harbor Drug, Valu Drugs, and West Main Pharmacy was amended to change the choice-of-law provision to Minnesota law and to delete the arbitral venue provision. Dkt. 78-1.

## DISCUSSION

The Federal Arbitration Agreement ("FAA") applies to arbitration agreements in any contract affecting interstate commerce. *See Allied-Bruce Terminix Cos., Inc. v.*

ORDER GRANTING DEFENDANTS' MOTION TO
COMPEL ARBITRATION - 2

*Dobson*, 513 U.S. 265, 273-74 (1995). Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The goal of the FAA was to place arbitration agreements "upon the same footing as other contracts," *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 511 (1974) (internal quotation marks omitted), and to counteract a perceived judicial hostility toward arbitration that sometimes overrode the parties' intent in contracting, *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 270-72 (1995). The Supreme Court recently clarified that "the federal policy is about treating arbitration contracts like all others, not about fostering arbitration." *Morgan v. Sundance*, 596 U.S. 411, 418 (2022).

Because arbitration is a matter of contract, *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal quotation marks and citations omitted), the Court's role is generally "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (citation omitted). Parties are free to delegate even these threshold issues to the arbitrator, as long as the agreement to delegate the issue is clear and unmistakable. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 69, n.1 (2010). "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other. The additional agreement is valid under § 2 'save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Id.* at 69. Under Supreme Court precedent, "if a party specifically challenges the delegation provision under Section 2 of the FAA, 'the federal court must consider the challenge before ordering compliance' with it." *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1009 (9th Cir. 2023) (quoting *Rent-A-Center*, 561 U.S. at 71). "As the party seeking to compel arbitration, [defendant] bears 'the burden of proving

ORDER GRANTING DEFENDANTS' MOTION TO
COMPEL ARBITRATION - 3

the existence of an agreement to arbitrate by a preponderance of the evidence.'" *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017) (quoting *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014)). Plaintiff, as the party asserting that the agreement is unconscionable, bears the burden of proving the defense. *Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080, 1089 (9th Cir. 2024).

### A. Choice of Law

Determining whether parties have agreed to submit a particular issue, such as validity and enforceability, to arbitration requires application of "ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Of course, "[b]efore a federal court may apply state-law principles to determine the validity of an arbitration agreement, it must determine which state's laws to apply. It makes this determination using the choice-of-law rules of the forum state, which in this case" is Washington. *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 994 (9th Cir. 2010). Although the parties agree that Washington's choice-of-law rules apply, they disagree on the outcome. Defendants assert that Minnesota law applies, and plaintiffs contend that Washington or California law should govern.

Washington generally enforces contractual choice of law provisions. *McKee v. AT&T Corp.*, 164 Wn.2d 372, 384 (2008) (citing *Erwin v. Cotter Health Ctrs.*, 161 Wn.2d 676, 695–96 (2007)). For Osterhaus and Jim's Pharmacy, the contractual choice is California law; for Harbor Drug, Valu Drugs, and Main West Pharmacy, the choice is Minnesota law.[1] When, as here, the contractual choice is disputed, the Washington

---

[1] The Court rejects defendants' argument that, because arbitration agreements are severable, a choice of law provision that appears outside the specific sections dealing with arbitration must be ignored. Regardless whether California, Minnesota, or Washington law applies, it is axiomatic that courts construe contracts to give meaning and effect to every provision. *See Remedial Constr. Servs., LP v. AECOM, Inc.*, 65 Cal. App. 5th 658, 663, 279 Cal. Rptr. 3d 909, 912 (2021), as modified on denial of reh'g (July 15, 2021); *Brookfield Trade Ctr., Inc. v. Cnty. of Ramsey*, 584 N.W.2d 390, 394 (Minn. 1998); *Stokes v. Polley*, 145 Wn.2d 341, 346-47 (2001). That a provision would be severed if found to be invalid does not mean that the remainder of the contract can be ignored. As the Ninth Circuit recognized in *Bielski*, when determining the validity of a delegation provision – which is severable from the surrounding arbitration agreement – "a court must be able to interpret that provision in the context of the agreement as a whole,

Supreme Court uses Restatement (Second) of Conflict of Laws § 187 to resolve the problem. *Erwin*, 161 Wn.2d at 694. Because issues related to capacity, formation, and validity cannot be resolved by an explicit provision in the parties' agreement, § 187(2) applies here. *Id.* at 695. Section 187(2) of the Restatement provides:

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied . . . unless either
>
> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Under this analysis, Washington courts will disregard a contractual choice of law if three factors exist: (1) without the provision, some other state's law would apply under § 188; (2) the chosen state's law violates a fundamental public policy of the state preferred under § 188; and (3) the chosen state's interests in determining the issue are materially outweighed by the interests of the state preferred under § 188. *Brown v. MHN Gov't Servs., Inc.*, 178 Wn.2d 258, 263 (2013); *McKee*, 164 Wn.2d at 384. "All three questions must be answered in the affirmative to disregard the parties' chosen state's law." *Pope Res. LP v. Certain Underwriters at Lloyd's, London*, 19 Wn. App. 2d 113, 133 (2021).

---

which may require examining the underlying arbitration agreement as well." 87 F.4th at 1012. Similarly, when determining the validity of an arbitration provision – which is severable from the surrounding contract – the court must be able to refer to the remainder of the agreement in interpreting and applying the arbitration agreement.

   The Court also rejects plaintiffs' argument that defendants waived their ability to rely on the most current Pharmacy Network Agreements because they filed their motion to compel arbitration based on contracts that had been superseded. Defendants have clearly not waived their right to seek arbitration, they simply identified the wrong contract for three of the named plaintiffs. Plaintiffs have had a full and fair the opportunity to respond to the January 1, 2025, contract provisions.

ORDER GRANTING DEFENDANTS' MOTION TO
COMPEL ARBITRATION - 5

Section 187(2)(a) does not apply. California is the place where OptumRx is incorporated and Minnesota is defendants' principal place of business. The parties' choice of the laws of those states is reasonable given defendants' connections to both states, the fact that the contracting pharmacies are located around the country, and defendants' desire to obtain predictability and uniformity of results in the interpretation of their various Pharmacy Network Agreements.

Under § 187(2)(b), the Court must first determine whether the law of another state would be chosen under § 188 of the Restatement (Second) of Conflict of Laws, which provides:

> (1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.
>
> (2) In the absence of an effective choice of law by the parties (*see* § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>
>   (a) the place of contracting,
>
>   (b) the place of negotiation of the contract,
>
>   (c) the place of performance,
>
>   (d) the location of the subject matter of the contract, and
>
>   (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.
>
> (3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189- 199 and 203.

ORDER GRANTING DEFENDANTS' MOTION TO
COMPEL ARBITRATION - 6

Section 6, in turn, provides that the factors relevant to the choice of law determination include:

    (a) the needs of the interstate and international systems,

    (b) the relevant policies of the forum,

    (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

    (d) the protection of justified expectations,

    (e) the basic policies underlying the particular field of law,

    (f) certainty, predictability and uniformity of result, and

    (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6 (1971). The particular issue at stake is the unconscionability of the delegation clause in the Pharmacy Network Agreements. Many of the factors set forth in § 6 and § 188 arguably point to the state in which the individual pharmacies are located, but neither party has argued for that result, presumably because it would involve the application of nearly every state's unconscionability laws. Defendants and the PSAOs chose to avoid (or at least reduce) the possibility of inconsistent interpretations and applications of the delegation clause by selecting a single state's laws to govern each contract, regardless of the number of member pharmacies or where they were located. Honoring that choice furthers certainty, predictability, and uniformity of result, it is easy to determine the applicable law, and its enforcement protects the justified expectations of the parties. Washington, on the other hand, was not chosen by the parties and has no ties to the litigation that could distinguish it – *i.e.*, make it more significant – than any other state in which a PSAO member pharmacy is located.

ORDER GRANTING DEFENDANTS' MOTION TO
COMPEL ARBITRATION - 7

The question then becomes whether California or Minnesota have the most significant relationship to the transaction and the parties. Defendants argue that the parties' selection of California law in the Osterhaus and Jim's Pharmacy contracts should be ignored in favor of Minnesota law because defendants are headquartered and maintain their principal places of business there. But OptumRx's place of incorporation is a factor to be considered and, at least until recently, was deemed important enough to guide the parties' choice of law. Defendants ignore the places of incorporation and business of the PSAOs and their member pharmacies and offer no evidence or argument regarding the place of contracting, the place of negotiations, or the place of performance. Defendants' recent preference for Minnesota law in its contract with Harbor Drug, Valu Drugs, and West Main Pharmacy does not justify upending the Osterhaus' and Jim's Pharmacy's agreement and expectations regarding the law that would govern their relationship. Both California and Minnesota have the same interest in protecting their own citizens from unconscionable agreements, but neither interest has nationwide reach, and none of the named plaintiffs are from either California or Minnesota. Thus, the Court finds that neither California nor Minnesota has the "most significant relationship" to this litigation. As agreed by the parties, California law will apply to the Osterhaus and Jim's Pharmacy contracts, while Minnesota law will govern the Harbor Drug, Valu Drugs, and West Main Pharmacy contract analysis.

**B. Validity of the Delegation Clause under California Law**

Plaintiffs have adequately challenged the validity of the delegation clause under *Bielski*, 87 F.4th at 1011 ("In sum, we hold that to sufficiently challenge a delegation provision, the party resisting arbitration must specifically reference the delegation provision and make arguments challenging it," argument which may apply to both the delegation provision and the surrounding arbitration agreement).

ORDER GRANTING DEFENDANTS' MOTION TO
COMPEL ARBITRATION - 8

> Under California law, a contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party. Thus, unconscionability has both a procedural and a substantive element. Both procedural and substantive unconscionability must be shown for the defense to be established, but they need not be present in the same degree. The more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to conclude that the term is unenforceable. Conversely, the higher the degree of procedural unconscionability, the less substantive unfairness is required. The overarching question in all unconscionability cases is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement. The unconscionability doctrine is concerned not with a simple old-fashioned bad bargain, but with terms that are unreasonably favorable to the more powerful party.

*Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080, 1089 (9th Cir. 2024) (internal quotation marks, citations, and alterations omitted). Plaintiffs have failed to show that the delegation clauses were procedurally unconscionable. Plaintiffs assert that the delegation provision and the arbitration agreement were drafted by the stronger party and offered on a take-it-or-leave-it basis, but they fail to acknowledge that they enlisted the services of a PSAO to negotiate the Pharmacy Network Agreements at issue. There is no evidence that the PSAOs are the weaker party or that they have no ability to negotiate the terms of the Pharmacy Network Agreement, including the arbitration and delegation provisions. In fact, the only evidence in the record is that PSAOs do negotiate the terms of the agreements, including the arbitration provisions. Dkt. 63 at ¶ 24.

At most, plaintiffs and their expert suggest that independent pharmacies are economically coerced into joining a PSAO and/or contracting with OptumRx, presumably because OptumRx's services are necessary to the pharmacies' core business of filling and dispensing prescriptions and OptumRx is one of the three biggest companies in a highly concentrated industry. But an attack on the contract as a whole, such as plaintiffs' assertion that defendants' anti-competitive conduct forced them (and, presumably, their agent

PSAOs) to contract with OptumRx regardless of the terms offered, is an argument for the arbitrator, rather than the Court, to decide. *Rent-A-Ctr.*, 561 U.S. at 70-71. Because both procedural and substantive unconscionability must be shown to invalidate a contract provision under California law, the absence of any procedural irregularity or unfairness dooms Osterhaus' and Jim's Pharmacy's defense to the delegation clause in their contracts.

### C. Validity of the Delegation Clause under Minnesota Law

Under Minnesota law, "the party asserting unconscionability must show that the contract is both procedurally and substantively unconscionable." *Carlson v. BMW Fin. Servs. NA, LLC*, 762 F. Supp.3d 820, 826 (D. Minn. 2025). As discussed above, plaintiffs have not shown that the delegation clause itself, separate from the contract as a whole, was obtained in a procedurally unfair manner. Nor have they shown that the January 1, 2025, amendment which chose Minnesota law was procedurally unconscionable. The earlier Pharmacy Network Agreements that chose California law contained specific provisions for amending the agreements, authorizing both unilateral and bilateral means. *See, e.g.*, Dkt. 63-8 at 21. The choice-of-law provision was amended by mutual agreement, with the agent representing Harbor Drug, Valu Drugs, and West Main Pharmacy signing off on the change in the fall of 2024. No procedural irregularity or unfairness has been established.

For all of the foregoing reasons, defendants' motion to compel arbitration (Dkt. 66) is GRANTED. To the extent the parties are unable to resolve this dispute through the good faith negotiating process set forth in the Pharmacy Network Agreements, either party may commence arbitration as set forth in their agreements. This matter is hereby STAYED in its entirety. The Clerk of Court is directed to enter a statistical termination in this case. Such termination is entered solely for the purpose of removing this case from the Court's

active calendar. The parties may, upon completion of arbitration, file a motion to confirm, vacate, or set aside the arbitral order under this cause number.

Dated this 25th day of November, 2025.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge